EDWARD S. HOWE *vs.* CITY OF LOWELL.

JOSEPH M. WILSON & another *vs.* SAME.

GEORGE L. GOODALE *vs.* SAME.

THOMAS J. UNDERWOOD *vs.* SAME.

SAME *vs.* SAME.

JOSEPH M. WILSON & another *vs.* SAME.

Middlesex.	March 16, 1898. — August 30, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Writ of Entry — Amendment — " Boulevard " — Deed — Condition — Breach — Waiver.*

At the trial of a writ of entry to recover land conveyed to a city upon the conditions that a portion of it should be laid out as a highway and the remainder used as a park or boulevard, and that a failure to do either should work a forfeiture, it is within the power of the judge to allow an amendment of the description of the land contained in the writ, which did not include the part laid out as a highway, so as to include all the land described in the deed.

A speedway or driveway seventy-five feet wide running parallel with a public street and distant twenty-five feet therefrom, the intervening space being turfed over and planted with shade trees, the northerly line of the street and the southerly line of the speedway being also planted with trees, is a "boulevard," within the meaning of the condition in a deed that the land "shall be improved, dedicated, and forever used by the grantee as and for a common, park, or boulevard, and for no other purpose."

The grantee of land in fee is entitled to make any use of it not prohibited by the conditions in the deed, whether the parties thought of it or not.

The construction and maintenance by a city of a system of pipes below the surface of the ground, for the purpose of obtaining and distributing water to its inhabitants, do not constitute a breach of the condition in the deed of the land to the city, that it "shall be improved, dedicated, and forever used by the grantee as and for a common, park, or boulevard, and for no other purpose"; nor do the experiments made on the land incidental to the subsequent use and temporary in character, by driving iron pipes into the ground, the surface of which is left in a disturbed condition to some extent, constitute such a breach.

The erection and maintenance by a city, for supplying its inhabitants with water, of a pumping station composed of a steam pump, engine, and boiler placed in a

building upon land conveyed to the city by a deed containing the condition that it "shall be improved, dedicated, and forever used by the grantee as and for a common, park, or boulevard, and for no other purpose," are a breach of the condition.

If the judge presiding at the trial of a writ of entry to recover land alleged to have been forfeited rules that, on the facts found, there was no waiver by or estoppel against the demandant, whether this is a ruling of law or a finding of fact, it is to be sustained, unless the facts found, as matter of law, require a different ruling or finding; and on the facts before it in the present case, this court cannot say that the rulings or findings upon this part of the case are erroneous.

If land is conveyed to a city upon the conditions that a portion of it shall be laid out as a highway and the remainder used as a park or boulevard, and that a failure to do either shall work a forfeiture, the bringing of a writ of entry to recover the land, the description of which does not include the part laid out as a highway, and which is cured afterwards by an amendment containing such description, is not a waiver of the breach of the conditions in the deed.

SIX WRITS OF ENTRY, to recover land in Lowell. The cases were tried together in the Superior Court, without a jury, before *Richardson,* J., who found for the demandants in each case; and, by agreement of the parties, reported the cases for the determination of this court. The demandant or demandants in each case had conveyed by deed a lot of land to the city of Lowell, and they bring these writs to recover the land, on the ground that the city has violated the conditions in the deeds. The facts appear in the opinion, and in the notes of the reporter thereto.

*F. W. Qua,* (*H. A. Brown* with him,) for the tenant.

*F. N. Wier,* for the demandants.

FIELD, C. J. These are six writs of entry, to recover possession of six different lots of land, which are designated on the plan as lots A, B, C, D, E, and F, and each writ relates to one lot. The plea in each case is *nul disseisin,* with a specification of an equitable defence by way of estoppel under St. 1883, c. 223, § 14, and a claim for an allowance for improvements under Pub. Sts. c. 173, § 19. Lot A was conveyed to the city of Lowell by deed dated January 17, 1890; lot B, by deed dated December 20, 1889; lot C, by deed dated January 30, 1890; lot D, by deed dated December 17, 1889; lot E, by deed dated April 14, 1890; and lot F, by deed dated December 20, 1889. Each of the deeds except that of lot E conveyed but one parcel of land, and after the description of the parcel contained the following conditional clauses:

" This conveyance is made on the express condition that the grantee shall, within three years from the date hereof, lay out and construct, and thereafter forever maintain, a public highway over the within described premises at least fifty feet in width, having the northerly line of the within described premises as the northerly line of such highway, and also on the express condition that that part of said premises not taken or used for said highway shall be improved, dedicated, and forever used by the said grantee as and for a common, park, or boulevard, and for no other purpose; and that if said grantee shall fail to keep and perform said conditions, or either of them, then and in such event this deed shall become and be absolutely null and void, and all and singular the above described premises, and all improvements and betterments thereon shall revert to and reinvest in me, the said grantor, and my heirs and assigns, as fully, completely, and effectually as if these presents had not been executed. . . . The right to take ice on the Merrimack River where it flows over the premises herein conveyed is hereby expressly reserved to the grantors, their heirs and assigns, or other person or persons who now have that right. It is, however, understood that the grantors, their heirs and assigns, or other person or persons above mentioned shall not have the right to pass over or cross any part of said premises except such as is covered by the river or such part as is or may be laid out or in use as a public highway, public road, or ferryway."

The deed which conveyed lot E conveyed two other lots, the first lot, lot E, containing about 3.49 acres, the second about 575 square feet, and the third about 1.87 acres. After the description of the first lot, the deed contained this clause:

" The conveyance of this lot is made on the express condition that the grantee shall, within three years from the date hereof, lay out and construct, and thereafter forever maintain, a public highway over the above described premises at least fifty feet in width, having the northerly line of the above described premises as the northerly line of such highway; and also on the express condition that that part of the above described premises not taken or used for such highway shall be improved, dedicated, and forever used by the grantee as and for a common, park, or boulevard, and for no other purpose."

After the description of the second and third lots, the deed contained this clause:

" The conveyance of the last two described lots is made on the express condition that the grantee shall, within three years from the date hereof, lay out said last two described lots as a public highway, and construct and thereafter forever maintain said public highway; and the conveyance of all the above described premises is made on the express condition that, if the grantee shall fail to keep and perform said conditions, or either of them, then and in such event this deed shall become and be ' absolutely null and void, and all and singular the above described premises, and all improvements and betterments thereon, revert to and reinvest in me, the said grantor, and my heirs and assigns, as fully, completely, and effectually as if these presents had not been executed. . . . The right to take ice found on the Merrimack River where it flows over the premises herein conveyed is hereby expressly reserved to the grantor, his heirs and assigns, or other person or persons who now have that right. It is however understood that the grantor, his heirs and assigns, or other person or persons above mentioned, shall not have the right to pass over or cross any part of said premises, except such as is covered by the water of the river, or such part as is laid out as a public highway."

We do not understand that the deeds conveyed these lands to the city expressly to be held for the purpose of a common, park, or boulevard, but that they conveyed them to the city without limitation, except as provided in the conditions in the deeds. Copies of the deeds are not before us.

The report of the presiding justice recites as follows: " After counsel for the demandants had made his opening, counsel for the tenant inquired if the description of the premises demanded in the several writs covered and corresponded with the description of the premises conveyed in the several deeds to the city. Counsel for demandants replied that the descriptions in the writs were the same as those in the deeds, except that that portion of the several tracts conveyed to the city by said deeds which had been laid out as a public street was not included in the description in the writs, and stated that neither of the demandants made any claim to the land within the limits

of said public street, alleging as a reason that that land had been taken by right of eminent domain for a street. Counsel for the tenant then claimed and requested the court to rule that, as the demandants had brought their actions for a part only of the land to which the condition attached, they had thereby waived the condition as to the remaining portion of the land, and such waiver operated to destroy the condition *in toto*, so that these actions cannot be maintained. Without making any ruling at that time on the question thus raised, I allowed the trial to proceed, and on the second day of the trial, after a portion of the evidence was in, on motion of counsel for demandants, against the objection of the tenant, I allowed each of the demandants so to amend the description of land contained in each writ that, as amended, all the land described in the several deeds of the demandants to the city of Lowell was included in such amended descriptions, and was claimed to have been forfeited. There was no other evidence offered as to whether the writs as amended were for the cause of action intended in and by the writs as originally brought." We are of opinion that it was within the power of the court to allow these amendments.

The presiding justice found the facts, a part of which appear in the margin.* We understand that the speedway was

---

* The judge found the following facts, in addition to those appearing in the opinion. In 1889 and 1890, the city purchased a strip of land along the northerly bank of the Merrimack River about one and one half miles long and from two hundred to six hundred feet wide, the lands conveyed by the deeds above mentioned being the westerly portion of the strip; and, in pursuance of a resolution of the city council, a public street fifty feet in width was laid out and accepted, such street running longitudinally through said strip of land. Within three years from the date of any of the deeds of the demandants, besides the street, a driveway or "speedway," so called to distinguish it from the street, was constructed through said strip of land seventy-five feet wide, running parallel with the street and distant twenty-five feet therefrom, the intervening space being turfed over and planted with shade trees, the northerly line of the street and the southerly line of the speedway being also planted with trees; but very little more, if anything, has been done on the lands in question.

In 1891, 1892, and 1895, the city, for the purpose of obtaining a supply of water by means of driven or artesian wells, drove a number of iron pipes two and a half inches in diameter into the ground upon the land in question. After the experiments of both 1891 and 1892, which proved unsatisfactory, one or two of these pipes were left in the ground. In 1892 the

southerly of the public highway, but not a part of it, and that the demandants concede that the highway was properly laid out. The first ruling of the court is as follows: "That the construction and maintenance by the city of said wells and pipes and pumping station, and the work done in connection therewith, and other facts found, constitute a breach of the condition contained in each of the six deeds first above described."

As the highway has been constructed, the question is whether there has been a breach of the conditions that the parts of the premises not taken for a highway " shall be improved, dedicated, and forever used by the grantee as and for a common, park, or boulevard, and for no other purpose." The title in fee to all the parcels vested in the city of Lowell, subject to conditions subsequent by the breach of which its title would be devested, and would revest in the grantors and their heirs. The subterranean waters in the parcels were a part of the parcels, and the grantors in the deeds have not reserved to themselves the property in these waters, while the deeds are in force. The grantors owned other lands northerly of the lands granted to the city, and they had an interest in imposing the conditions that the lands granted, so far as they were not used for a highway, should be " improved, dedicated, and forever used as a common, park, or boulevard." From the form of the conditions, it is apparent that the city could use the lands in part as a common, in part as a park, if

---

ground was dug up and left in a rough condition, one or two pipes were left projecting above the surface, and in a number of cases where the pipes were removed the holes were not filled in, so that it was hardly safe to walk over it; some trees originally on the land at the time of the conveyance were destroyed, and a sluiceway was dug to carry off waste water, and refuse coal was left upon the ground. The experiments of 1895 proved a success, and a permanent source of water supply has been established on this land. One hundred and forty such pipes have been driven into the ground. A large pipe connects these pipes with an engine, which is located in a building on lot A. These iron pipes have been driven into the ground below the surface out of sight. From this engine-house a large iron pipe runs longitudinally in the speedway underground through each lot of land. This pipe carries the water by gravity into the conduit of the city. For a few weeks in 1895, while this water plant was in the experimental stage, the iron pipes which had been so driven projected above the ground, and the pipe connecting them with the engine was not covered. The speedway was dug up and substantially closed to public travel for about two weeks while the longitudinal pipe was being laid.

there be any distinction between a common and a park, and in part as a boulevard. The word " boulevard," as now commonly used in this Commonwealth, has not a very definite meaning. It sometimes means little more than a wide street or highway. In the Century Dictionary it is said, " The name is now sometimes extended to any street or walk encircling a town, and also to a street which is of especial width, is given a park-like appearance by reserving spaces at the sides or centre for shade trees, flowers, seats, and the like, and is not used for heavy teaming." It seems to us that the speedway may properly be said to be a boulevard, within the meaning of that word in the conditions of the deeds. The ruling of the presiding justice indicates that he was of that opinion, for he ruled only that the construction and maintenance by the city of said wells and pipes and pumping station, and the work done in connection therewith, and the other facts found, constituted a breach of the conditions. Except as to lot A, the question is whether the construction and maintenance by the city of Lowell, as shown by the report of the system of pipes below the surface of the ground, for the purpose of obtaining and distributing water to the inhabitants of the city, constitute a breach of the conditions.

In *Wellington, petitioner*, 16 Pick. 87, 99, the terms of the grant of the town commons by the proprietors of common and undivided lands to the town of Cambridge were that " the same is hereby granted to the town of Cambridge, to be used as a training field, to lie undivided, and to remain for that use forever, provided, nevertheless, that if the said town should dispose of, grant, or appropriate the same, or any part thereof, at any time hereafter, to or for any other use than that aforementioned, then, and in such case, the whole of the premises hereby granted to the said town shall revert to the proprietors granting the same," etc. Of this the court say: " By the grant the town became owners of the soil with full power, as such owners, to make any use of the property which owners of land can make, subject only to the restraint and limitation expressed in the condition. All such limitations and restrictions, especially those which go to create a forfeiture, are to be construed strictly, and not to be extended beyond the plain terms of the clauses in which they are expressed, and the obvious purposes for which they are intro-

duced. Any other construction would impose a useless embarrassment upon the rights of property in the grantee, without benefit to the grantor. It appears to us, construing this grant according to these rules, that the intent of the restriction and condition in this deed was, that the lands should remain common and open, in contradistinction to being ·divided to be held in severalty, and appropriated to private use, and that no disposition or appropriation should be made of it, inconsistent with its use as a training field."

In *French* v. *Quincy,* 3 Allen, 9, it is said in the opinion : " It is sufficient if a condition is performed in substance."

In *Crane* v. *Hyde Park,* 135 Mass. 147, it is said in the opinion : " The demandants' claim is *strictissimi juris.* It is well settled that such a condition, when relied upon to work a ·forfeiture, is to be construed with great strictness."

In *McKelway* v. *Seymour,* 5 Dutch. 321, 327, it is said in the opinion: " So long as the land was used primarily and mainly , for the purposes of a raceway, and the embankment necessary to support it, any use of it for other purposes, either by the water power company or by other persons, with or without their consent, so long as these uses were not inconsistent with its use for the main purpose, could not operate as a breach of the condition. The condition is to be construed in accordance with the manifest intention of the parties and the end they had in view. Conditions, when they tend to defeat estates, are *stricti juris,* and to be construed strictly." See *Rose* v. *Hawley,* 141 N. Y. 366 ; *Southard* v. *Central Railroad,* 2 Dutch. 13.

It seems to us in the present cases that the conditions were intended to relate to the use to be made of the surface of the lands granted. We think that the demandants, continuing to be the owners of adjoining lands, provided that the lands granted to the city should be used only for a public highway, common, park, or boulevard, and for no other purpose, because uses for other purposes might be detrimental to their adjoining estates. The presiding justice has found " that the use of the land for the purpose of driving wells and drawing water therefrom, and the erection of engines and boiler-house, are uses and purposes not in the minds of the grantors, or even of the grantee, when the deeds were given." As the grantee took

the lands in fee, it is entitled to make any use of the lands not in violation of the conditions in the deeds, whether the parties thought of it or not.   It is not a new use to lay water pipes in lands taken and used as a highway.   Water pipes are sometimes laid in and through commons and lands taken or purchased for a public park, but we are aware of no case in which it has been held that it requires a new taking to do this, or that such a laying. of pipes is not within the terms of the deeds granting lands for these purposes.   On the theory of the demandants, the subterranean waters of the lands cannot be used by the city without forfeiting the lands, and cannot be used by themselves because they have not reserved the waters or excepted them from the grant.   We are of opinion that the contention of the tenants is the more reasonable one, namely, that the conditions mean that the lands shall be used for a common, park, or boulevard, and for no other purpose which shall interfere or be inconsistent with such use.   The experiments made on the lands were but incidental to the use afterwards made of the lands in obtaining a water supply for the city, and were temporary in character and cannot be held to work a forfeiture of the lands if the construction and maintenance of the system of pipes are not a breach of the conditions.   As the pipes are laid below the surface of the ground, and do not interfere with the use of the surface as a common, park, or boulevard, except when it is necessary to clean or repair these pipes, we are of the opinion that the construction and maintenance of the system of pipes do not constitute a breach of the conditions in the deeds.

With reference to lot A, the presiding justice found that " the pump used for raising the water from said wells into said large iron pipe is a steam pump, and, together with the engine and boiler for operating the same, is placed in a wooden building, which is about forty feet square, situated on the lot marked A "; and that " it is the intention of the city also soon to replace the wooden building upon said lot A, used for the pumping station, with a new structure of brick or stone constructed with artistic taste, and which may be made an attractive feature of the landscape."   It may be, when large tracts of land are granted for a public park, that a pumping station for irrigating the land granted, or for supplying it with water sometimes would be reasonably

necessary for the maintenance of the park. But this pumping station was not erected, and is not used for that purpose. So far as appears, none of the water is used on the lands granted, but it is a pumping station for supplying the inhabitants of the city of Lowell with the water. The city has been authorized by the Legislature to take and hold lands and erect buildings and other structures for the purpose of obtaining a supply of water for its inhabitants. St. 1893, c. 412. St. 1870, c. 321. By Pub. Sts. c. 27, § 50, the selectmen of towns are authorized to establish and maintain such public drinking troughs, wells, and fountains within the public highways, squares, and commons of their respective towns as in their judgment the public necessity and convenience may require, and this section applies to cities. Pub. Sts. c. 28, § 2. Pub. Sts. c. 54, § 16, provide that "no building exceeding six hundred square feet in area upon the ground shall be erected in or upon a common or park dedicated to the use of the public, without leave of the General Court." These statutes, however, have no application to the present cases, because the question is whether the conditions contained in the deeds have been broken. As the building erected on lot A, with its boilers and engines, is not incidental to the maintenance of a common, park, or boulevard, the erection and maintenance of it seem to us inconsistent with the use of the surface of the land solely for a common, park, or boulevard. It is a distinct and different use of the surface of the land, and we are of opinion that the construction and maintenance of this building in the manner and for the purposes shown by the report are a breach of the condition contained in the deed of lot A. This is the land demanded in the first named action, that of *Howe* v. *Lowell.*

. Has the demandant Howe waived this breach, or is he estopped from insisting upon it? The presiding justice ruled on the facts found that there was no waiver or estoppel. Whether this is a ruling of law or a finding of fact, it is to be sustained unless the facts found, as matter of law, require a different ruling or finding. It is to be noticed that the terms of the deed were equally well known to both parties, and whether the city was violating the condition of the deed was a matter of which the city could judge as well as Howe. Howe did nothing actively to induce the city to erect the pumping station. He simply stood by and saw it

done without making objection, and he afterwards gave a deed to the city of another lot of land, in which reference is made to the right of the city to throw steam or hot water from its engine or pumping station into the river at any point on the bank. Underwood gave a similar deed of another lot.* The presiding justice has found "that neither Howe nor Underwood intended the conveyance of these lots of land, or any of the other acts done by them, as a waiver of any of the conditions in any of the other previous deeds." All the evidence on which the justice made this finding is not before us. It is not found that the city understood that Howe had waived any of the conditions contained in his deed, and that it relied on this waiver in proceeding to erect the pumping station. The inference to be drawn from the report is perhaps the other way. On the facts before us we cannot say that the rulings or findings on this part of the case are erroneous.

The bringing of the action for a part only of the land, a defect which was cured by the amendments allowed by the court, was not, we think, a waiver of the breach of the conditions. It was a natural mistake, the reasons for which appear; there was no intention to waive the breach, and the law does not attribute any such absolute effect to such a mistake.

The ruling of the presiding justice with reference to the claim for the value of improvements is as follows: " 5. That on these facts, and there being no evidence of the value of the improvements to, if of any value to, the demandants, having been put in, the tenant is not entitled to any compensation in either of said actions for the value of improvements made by it on the demanded premises, and found for the demandants in each case, and the tenant excepted." This ruling is general, and relates to all the cases. The report concludes as follows: " By agreement of the parties I report the cases to the Supreme Judicial Court for its determination; if the above rulings are correct in law, and said amendments were properly allowed, judgment is to be entered for the demandant in each case. If either of the first four

---

* The judge found also that, soon after the work of driving the wells had begun, Howe, Underwood, and Wilson met and came to an understanding, at Wilson's suggestion, that they would not then make any objection to the work, or say anything about their rights under the conditions in the deeds.

rulings as to any of these cases is not correct, then in that case judgment is to be entered for the tenant. If judgment is to be entered for any of the demandants, and the fifth ruling is erroneous, then the cases in which such judgment is rendered may, if the Supreme Judicial Court shall decide that it ought to be done, be sent back to the Superior Court for the assessment of the sums to be allowed for improvements." In Howe's case, whether the demandant is entitled to anything for rents and profits, and whether the tenant is entitled to anything for the value of improvements, are questions which have not been fully argued in this court, and we doubt whether they were fully presented to the Superior Court. We therefore think it best to leave these questions open for the further consideration of that court. See Pub. Sts. c. 173, §§ 21, 28.

According to the terms of the report there must be judgment for the tenant in each of the cases, except in that of *Edward S. Howe* v. *City of Lowell.* In that case there must ultimately be judgment for the demandant; but the questions whether the demandant should recover anything for rents and profits, and the tenant should recover for the value of improvements, are to be determined by the Superior Court.          *So ordered.*