HOWARD E. HAMLEN & others *vs.* JACOB SORKIN & others.

Middlesex.    December 1, 1924. — January 29, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Equitable Restrictions. Metropolitan Park Commission. Fresh Pond Parkway. Words, "Parkway."*

Acting under Sts. 1894, c. 288; 1895, c. 450, the metropolitan park commission in 1899 took land in Cambridge for the purpose of laying out and establishing Fresh Pond Parkway. The boundary lines of the taking, which extended from Brattle Street to Huron Avenue, were irregular and did not follow a regular course as of a boundary or a way to be constructed. Deeds to the Commonwealth were taken by the commission from owners of land taken, and afterwards the Commonwealth sold and conveyed to abutting owners parts of the land taken which were not required for the construction of the parkway. Both the deeds to and those from the Commonwealth contained covenants preventing the erection of a building "within twenty five feet from the exterior line of said parkway." The parkway as projected was to cross Hawthorne Street, and the boundary of the taking on its northerly side coincided with the westerly bounds of Hawthorne Street for about ninety-six feet from a curved line forming the intersection with the parkway, then crossed Hawthorne Street from west to east, and then, by a curved line in a southeasterly direction, gradually drew away from the easterly line of Hawthorne Street until it reached the northerly side of Brattle Street, thus including in the land taken a portion of Hawthorne Street running to a point about ninety-six feet back from the point of intersection of Hawthorne Street with the new parkway, and also a strip of land of varying width beyond the easterly side of Hawthorne Street. After the making of the deeds above described, the commission constructed a way, but did not include in such construction the ninety-six feet of Hawthorne Street lying northerly of the intersection of the two streets. One who had purchased land, abutting on Hawthorne Street at those ninety-six feet, from a person, who at the time of the taking had owned a larger parcel of land of which it was a part and had conveyed the rest of that parcel to the Commonwealth by a deed containing the covenant above described, proposed to erect thereon a brick twenty-five apartment house which should extend within twenty-five feet from the line of the taking. Other owners of land abutting on the new parkway sought, by a bill in equity, to have him enjoined from so doing. *Held*, that

· (1) The restriction in the deeds above described was a part of a general plan or scheme for uniform restrictions against building within twenty-five feet of the parkway, and the easement of these restrictions was appurtenant to the several premises of the plaintiffs;

(2) It must be assumed, in the absence of anything to show a different purpose, that all land taken in the circumstances above described was intended to be used for a parkway;

(3) This assumption was not affected by the fact that some parts of the land taken under authority of the act, when not required for the construction of the parkway, were sold by the Commonwealth;

(4) The rights of the parties in this case were fixed by the conditions at the time of the grants;

(5) There being no such formal act by the Commonwealth as is described in St. 1895, c. 450, § 2, there was no abandonment of any of the land taken in Hawthorne Street;

(6) It could not be said as matter of law that the lines including Hawthorne Street as described in the taking were not appropriate for the limits of the parkway;

(7) The exterior lines of the parkway, for the purpose of construing the deeds of the defendant's grantor, were to be determined by those described in the instrument of taking and not by the lines of the roadway actually constructed, and the restrictive covenant as to building applied to the defendant's land where it bounded on Hawthorne Street to the most northerly limit of the taking on that street.

In his answer in the suit above described, the defendant alleged that the plaintiffs did not come into court with clean hands and were not attempting in good faith to enforce the restriction. At the hearing he offered to prove that the plaintiffs before bringing the suit had stated to the defendant that if he would erect only single family houses on his land they would not object to his building within five feet of the line of the parkway, but that, if he persisted in his purpose as to the large apartment house, they would do everything in their power to prevent his proceeding; that, by reason of an ordinance passed after the defendant procured his permit to erect the large apartment house, he could not procure another permit, and that the plaintiffs refused to assent to any alteration of his plan under the permit already granted. The evidence was excluded. *Held*, that such evidence did not tend to prove bad faith on the part of the plaintiffs, the plaintiffs being entitled to insist on the observance of the restrictions, and their motive or purpose in doing so being immaterial.

BILL IN EQUITY, filed in the Superior Court on May 10, 1924, and afterwards amended, seeking to enjoin the defendant Sorkin from erecting any building within twenty-five feet of that part of Hawthorne Street in Cambridge included in a taking by the metropolitan park commission for the laying out and the establishing of Fresh Pond Parkway.

In the Superior Court, the suit was heard by *Weed*, J. Material features of a plan of the taking by the metropolitan park commission, which was in evidence, are shown on the next page.

The taking by the commission is shown within the heavy black lines. The portion of the land formerly owned by Daniel P. and Mary E. Sullivan, upon which the defendant Sorkin, as owner at the time of the filing of the bill, had begun excavation for the building of a twenty-five apartment house, is shown within the lines A — B — C — D — E — F — G — H. The point on Hawthorne Street beyond which construction of the parkway had not gone is designated as B. The defendant purposed building within twenty-five feet of the line A — B. The plaintiffs contended that, that line being a part of "the exterior line of" the parkway, such construction would be in violation of the restriction in the deeds from the defendant's predecessors in title to the Commonwealth, and that the defendant was bound by those restrictions.

The triangular portion of the land of the Sullivans, shown within the lines L — M — N — L, was sold by the Commonwealth, after the taking and the deed of the Sullivans to the Commonwealth, to abutting owners because it was not required for the construction of the parkway. A similar course was pursued by the commissioners in relation to lands taken from other owners between Brattle Street and Huron Avenue. Pieces thereof seized and not used were sold to abutting owners, and in taking deeds from owners as settlements were made, or in deeding portions seized, similar covenants and restrictions to those in the Sullivan deed were required in

deeds to the Commonwealth and were imposed in deeds from the Commonwealth.

In an amendment to his answer, the defendant alleged in substance that the plaintiffs did not come into court with clean hands, and were not attempting in good faith to enforce the restrictions. In support of these allegations he offered to prove "that some time prior to the filing of this bill, the defendant Sorkin had a conversation with several of the plaintiffs who are named in this bill . . . ; that at the time of the conversation the subject matter practically was the erection of an apartment building; that the plaintiffs said they would do everything in their power to prevent the erection of an apartment building there, that they would fight the case just as much as possible, and take it into court; and that at the same time the plaintiffs suggested that the defendant could erect on this land a couple of single-family houses; and that if that were done there wouldn't be any question from them as to the restrictions or as to his building within five feet of Hawthorne Street; but that if he intended to build an apartment building there they would try to enforce all restrictions upon Hawthorne Street; that at the time the defendant Sorkin got his permit from the city hall to build, it was perfectly all right and legal for him to build the apartment as he proposed, but shortly after that, an ordinance or law of the city of Cambridge went into effect so that while the defendant might build as he contemplated and as the plan shows, so far as the city was concerned, he could not make any changes, so that the effect of this action would be that if the restrictions were enforced within five feet of Hawthorne Street, the defendant could not put up an apartment building because the ordinance or law prohibits it at the present time; and if the restriction is not enforced the defendant could go ahead and build it, because all his agreements were made before the law came into effect, but there could be no alterations in the proposed apartment building; and that at city hall in Cambridge about the time of the hearing the defendant talked with several of the plaintiffs about that and they would not agree; in fact they opposed any changes in the plans for an apartment building: that is,

that the defendant was willing to agree in order to save time and trouble and all of that, if he could do so, to make changes in his plans if there would be no opposition, so that the matter could be put through in city hall and a modified apartment building erected, but the plaintiffs would not agree to that."

The judge excluded the evidence thus offered as immaterial and irrelevant. Other material facts found by the judge are described in the opinion. He ruled that "the twenty-five foot setback," described in the opinion, as imposed upon the land retained by the Sullivans after the deed to the Commonwealth was "not applicable to the part of the defendant's land which bounds on that part of Hawthorne Street within the limits of said taking, not wrought for travel as part of the roadway of said Parkway," and ordered a decree dismissing the bill.

At the request of the parties, the suit then was reserved for determination by this court upon the pleadings and findings of fact by the trial judge.

*H. M. Davis,* for the plaintiffs.

*G. S. Ryan,* for the defendants.

SANDERSON, J. This is a bill in equity to enforce a restriction on land of the defendant Sorkin by enjoining him from erecting a building thereon within twenty-five feet of the exterior line of Fresh Pond Parkway. The trial court, after hearing, made findings of fact, entered an order that the bill be dismissed with costs, and reserved and reported the case to this court upon the pleadings, findings of fact, and order for a decree. ·

The plaintiffs own land abutting on Fresh Pond Parkway, in Cambridge, subject to certain restrictions. The defendant Sorkin has since April, 1924, owned land subject to the same restrictions, bounded in part on Fresh Pond Parkway and in part on a way called Hawthorne Street. The other defendants are interested in the real estate of Sorkin as mortgagees of record. The defendant Sorkin will be referred to as the defendant.

The restrictions to which the defendant's land is subject are contained in a deed from Daniel P. and Mary E. Sullivan to the Commonwealth of Massachusetts, dated May 6, 1902.

By an instrument of taking, dated September 27, 1899, the Metropolitan Park Commission, acting under St. 1894, c. 288, and St. 1895, c. 450, took a parcel of land extending from Brattle Street to Huron Avenue, in the name of the Commonwealth of Massachusetts and for its benefit, for the purpose of laying out and establishing the Fresh Pond Parkway. Included therein was a part of the way called Hawthorne Street. The lot formerly owned by the Sullivans and the part of it which is now owned by the defendant, as well as some of the boundary lines of the taking, are shown on the printed plan which is a reproduction, in part, of the one accompanying the instrument of taking. The Commonwealth paid the several owners their damages for the taking, and took from them deeds of the land included in the taking and releases of their claims for damages. In all of these deeds uniform restrictions were contained applying to the remaining land of the grantors abutting on said parkway and lying within one hundred feet from the line thereof. By means of these and other conveyances, similar restrictions were imposed upon all land abutting on the parkway and to a distance of one hundred feet therefrom, between Brattle Street and Huron Avenue, and were a part of a general plan or scheme for uniform restrictions against building within twenty-five feet of the parkway, and the easement of these restrictions was appurtenant to the several premises of the plaintiffs.

Before the taking the easterly boundary of the land owned by Daniel P. and Mary E. Sullivan was the way called Hawthorne Street, which will be referred to in this opinion as Hawthorne Street. This street at the time of the taking was laid out on a plan filed in the Registry of Deeds, but was not constructed. In August, 1924, the street north of the part where the roadway and walk of the parkway were actually built, remained rough and uneven, unwrought for travel, although vehicles could pass over it. Recently, Hawthorne Street between the northerly limits of the Commonwealth's taking and Huron Avenue has been laid out as a public way by the city authorities. The part of the Sullivan lot southerly of the line running through it, as

shown on the plan, was taken by the Commonwealth and later Daniel P. and Mary E. Sullivan, by their deed hereinbefore referred to, released their interest therein to the Commonwealth " Together with all that portion of the fee and soil of said Hawthorne Street included within said Taking lying adjacent to the parcel above described and adjacent to our said remaining land which we may lawfully convey." The part of the Sullivan lot northerly of the line of the taking is now owned by the defendant. The restriction in this deed from the Sullivans to the Commonwealth material to this case is in these terms: " No building or part thereof shall be erected, placed or maintained upon said premises within twenty five feet from the exterior line of said parkway, provided, however, that the steps to it may project into said reserved space." In said deed the Commonwealth agreed to construct along the boundary line of said parkway within said parcel of land (meaning the parcel described in the deed from the Sullivans) a roadway and walk to which the grantors, their heirs and assigns shall have free access, with the right to use the same for the purposes of a way. The restriction was by the terms of the deed to continue in force so long as such roadway and walk shall be maintained by the Commonwealth, and the grantors, their heirs and assigns shall have free access thereto and liberty to use the same for the purposes of a way. The northerly line of the taking as it passed through the Sullivans' land curved to the north by a line thirty-six and seventy-eight hundredths feet in length into Hawthorne Street and then continued in a northerly direction on the line between the land of the Sullivans and Hawthorne Street for a distance of ninety-six and seventy-two hundredths feet, so that Hawthorne Street where the Sullivans' land bounded on it was taken for a distance of ninety-six and seventy-two hundredths feet northerly from the end of the curve at the southeasterly corner of the Sullivans' remaining land, now owned by the defendant. The plan shows that the taking on the easterly side of Hawthorne Street opposite the defendant's land included private land beyond the limits of Hawthorne Street. This land opposite that of the defendant, and bounding on the line which

marked the limits of the taking, was made subject to a restriction against building in the same terms as that above quoted.

Shortly after the taking the Commonwealth, in accordance with the covenant in the deed, constructed and has since maintained along the boundary line of the parkway, within the limits of the parcel of land described in the deed from the Sullivans, a roadway and walk adjacent to the defendant's lot and bounding it on the south, to which the grantors and the defendant have had free access with the right to use the same for the purposes of a way. At Hawthorne Street, it has constructed its roadway and walk as far as a line drawn across that street at the northerly end of the curve measuring thirty-six and seventy-eight hundredths feet at the southeasterly corner of the defendant's land, but it has not constructed a roadway and walk within the limits of the taking on Hawthorne Street, northerly of this line, namely, along that portion of Hawthorne Street on which the defendant's land bounds for ninety-six and seventy-two hundredths feet. This part of the land taken has not been planted with trees and cared for, as has the parkway over which the roadway and walks were constructed.

The defendant is intending to build and has begun excavating for a brick twenty-five apartment house within twenty-five feet of the line of the taking on that portion of Hawthorne Street where it extends northerly on the defendant's land ninety-six and seventy-two hundredths feet; and he contends that the restriction does not apply to this part of his land. This building if erected will be more than twenty-five feet from the line of the parkway in the part where the roadway and walk have been constructed. The court, in making the order that the bill be dismissed, construed the twenty-five-foot restriction as not applicable to the part of the defendant's land which bounds on that part of Hawthorne Street within the limits of the taking not wrought for travel as part of the roadway of said parkway.

A parkway or boulevard is a broad thoroughfare beautified with trees and turf. It is intended for recreation and street purposes. In *Howe* v. *Lowell*, 171 Mass. 575, 581, the court

said: "The word 'boulevard,' as now commonly used in this Commonwealth, has not a very definite meaning. It sometimes means little more than a wide street or highway. . . . 'The name is now sometimes extended . . . to a street which is of especial width, is given a park-like appearance by reserving spaces at the sides or centre for shade trees, flowers, seats, and the like, and is not used for heavy teaming.'"

The metropolitan park commissioners have been given large powers and much must be left to their judgment in determining the nature of a parkway to be constructed. That body has the responsibility of making plans, of deciding what the width and shape of the way shall be, the manner in which it is to be ornamented, by what curves or lines the entrances into adjoining streets should be made, as well as of deciding within reasonable limits when the way should be constructed. By St. 1894, c. 288, entitled an act to authorize the metropolitan park commission to construct roadways and boulevards, the commissioners are given the right to connect any road, parkway, or other public open space within any part of cities or towns of the metropolitan district by a suitable roadway or boulevard, although the land so taken or any part thereof be already a street or way. The plan which accompanied the taking indicates that it was a taking for "Fresh Pond Parkway." It must be assumed in the absence of anything to show a different purpose, that all land thus taken was intended to be used for the parkway. This assumption is not affected by the fact that some parts of the land taken under authority of the act, when not required for the construction of the parkway, were sold by the Commonwealth.

The rights of the parties in this case were fixed by the conditions at the time of the grant. The exterior line of the parkway on the defendant's land has been the same ever since the deed was given in 1902. It cannot be contended that the Commonwealth has abandoned any of the land taken which bounds the defendant's land. This could be done only by deed and plan recorded. St. 1895, c. 450, § 2. The mere fact that the Commonwealth has failed to construct a

roadway or walk in a part of the way taken does not prove that the land will not be developed and used for a parkway. It may be that the reason why the roadway and walk in the part of Hawthorne Street bounding the defendant's land have not been wrought for travel to the northerly line of the taking is that until recently the street connecting with this line of the parkway has not been laid out as a public way. The city authorities began their layout of Hawthorne Street at the northerly line of the Commonwealth's taking, assuming apparently that the connecting roadway within the limits of the taking would be constructed by the metropolitan park commissioners. The commissioners could anticipate convenient entrances into Hawthorne Street when laid out and developed as a public way. It is significant that the Commonwealth agreed to construct a roadway and walk only within the parcel of land deeded by the Sullivans and made no agreement for construction along the boundary line of their remaining land on Hawthorne Street, while the restriction as to building applies to the whole exterior line of the parkway. The same reasons for restrictive covenants as to building would exist where the parkway intersects and extends into intersecting streets as upon the other parts of the way.

The purpose of extending the taking for ninety-six and seventy-two hundredths feet northerly into Hawthorne Street may be inferred from the instrument of taking and the plan which accompanied it. A line with a series of three curves each with a radius differing from the others began at the easterly side of Hawthorne Street at the most northerly point of this taking and extended to the limit of the taking at Brattle Street, a distance of five hundred sixty-nine and thirteen hundredths feet, thus making the end of the proposed parkway at Brattle Street two hundred twenty-six and fifty hundredths feet in width and including in the taking the whole of Hawthorne Street from the northerly end of the taking to Brattle Street. To provide for this width at Brattle Street it was necessary for the park commissioners to decide where to start and what lines to have for the easterly boundary of the parkway, and they also

had the duty of deciding by what line they would make the connection between the parkway and Hawthorne Street. This court cannot say that the lines as thus determined were not appropriate for the limits of the parkway. Its exterior lines are to be determined by those described in the instrument of taking and not by the lines of the roadway actually constructed, and the restrictive covenant as to building applies to the defendant's land where it bounds on Hawthorne Street to the most northerly limit of the taking in that street.

The evidence offered to show that the plaintiffs were not attempting in good faith to enforce the restriction was properly excluded. It did not show bad faith on their part. They are entitled to insist on the observance of the restriction, and their motive or purpose in doing this is immaterial. *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378.

The order for a final decree dismissing the bill was not warranted. A decree should be entered perpetually enjoining the defendant Sorkin from erecting any building within twenty-five feet from the exterior line of the parkway as that line is defined in the instrument of taking, with costs to the plaintiffs.

*Ordered accordingly.*