BAYARD

*v.*

BANCROFT, ET AL.

(Court of Chancery of Delaware. Nov. 6, 1905.)

*Thomas F. Bayard,* in pro. per. *William S. Hilles,* for respondents.

NICHOLSON, Chancellor: A motion for a preliminary injunction in this cause was argued on bill and answer September 11, 1905, and on September 18th an amended bill was filed, in which the allegation of injury or detriment contained in the original bill was amplified. To this the People's Railway Company, respondent, filed its answer, and the amended pleadings were submitted by counsel without further argument.

It would be useless for me to state at length the whole case presented by the pleadings, as it is essentially the same as that presented in the suit of Samuel Bancroft, Jr., against the same defendants, except that the present suit is concerned only with one of the tracts of land mentioned and described in that cause, and is brought by an abutting landowner, instead of a grantor. The opinion, which was filed on the 28th of August last past, with the order denying the motion for a preliminary injunction, in the suit brought by Mr. Bancroft set forth in detail all the facts involved and the questions raised in that cause. *Samuel Bancroft, Jr. v. William P. Bancroft et al., (Del.Ch.)* 61 *Atl.* 689.

The question to be considered in the case before me at the very outset was vigorously argued by respondent's counsel, and if his contention be correct it will be decisive of the pending motion. The question to which I refer is whether the complainant has any standing in a court of equity as an abutting landowner upon the allegation of injury contained in his bill. He alleges, and it is not denied, that he is the sole owner in fee of a lot of land situated on the southerly corner of Red Oak Road and Greenhill avenue, which abuts upon the parcel of land which William P. Bancroft and wife did, on the 28th of September 1899, convey unto the mayor and council of the city of Wilmington "for the sole use and behoof of a public park," and that he, the said complainant, derived his title thereto by fee-simple deed from the Woodlawn Company, dated May 5, 1904, which company in turn derived its title from the said William P. Bancroft after he had made his conveyance to the municipality for park purposes as set out above.

The complainant's allegation of damage or detriment is contained in the sixteenth paragraph of the bill as amended, and is as follows:

"(16) That your orator avers that it would be detrimental and unjust to him as a citizen and abutting owner upon the said parcel of the said park land if the said People's Railway Company is allowed to place, install, and operate its line of railway upon the said park land mentioned in paragraph 5 of this bill, for the following reasons: (a) That the installation and operation of the said railway would destroy the use of said parcel of land in so far as it traversed the same by destroying the same for park purposes. (b) That the installation and operation of said railway upon said parcel of land would be an unsightly object in the said park, and in so far as the use and beauty of the said park is destroyed the rights and pleasures of your orator as an abutting owner would be interfered with. (c) That the property of your orator as an abutting owner is enhanced by reason of the fact that his said property abuts upon the said parcel of land which was given solely for park purposes, and that any use other than that of a park purpose, more especially the proposed use by the said railway company, would destroy the rights and pleasures of your orator as an abutting owner. (d) That your orator by a valid contract and pur-

chase became the owner of the said abutting parcel with the idea and intention that he should have forever all the rights and pleasures of an abutting owner upon said parcel of land in accordance with the terms and conditions under which the said parcel of land became a part of the park system, so that the installation and operation of the said railway upon the said parcel of land would be a perpetual interference and abridgement of your orator's pleasure and vested rights as an abutting owner in the said land. (e) That your orator as an abutting owner upon the aforesaid parcel of park land would, if the said railway company was allowed to install and operate the line of railway over the said parcel, be irreparably injured, in that the said parcel of land in the park system would be subjected to the use and occupation by the said railway, contrary to the terms and conditions under which the said parcel of land became a part of the park system. (f) That upon the installation and operation of the said railway upon the said park land your orator as an abutting owner would be forever and irreparably prevented from enjoying the beauties and pleasures of the said park land for the proper purposes for which it was given, so long as the said railway was allowed to keep its rails, poles and wires and to operate its cars over and upon the said parcel of land."

In response to this paragraph of the bill the People's Railway Company, respondent, denies in its answer all the allegations seriatim, and alleges that "it is not the province of a court of equity to protect pleasures," and "that it is not informed what rights of the complainant are interfered with," concluding as follows: "And this defendant generally denies that any property rights of the said complainant would in any way be affected, abridged, or interfered with by the construction of the said line of railway, and this defendant further denies that there is anything contained in the said sixteenth paragraph of the said complainant's bill which entitles him to the relief prayed for therein."

The complainant has also filed an affidavit which contains the following allegations: "That the said proposed use of the said parcel of the park system by the defendant the People's Railway Company is plainly within sight of the abutting property owned by the said complainant, and that the said complainant can by standing upon his

front doorstep plainly see a large portion of the said railway which runs through the parcel of the park aforesaid, and that the proposed mode of constructing and operating the line of railway will cause the digging of a 12-foot trench or cut within the immediate view of the said complainant's property, and thus transform what is now a grassy knoll of great beauty into a disfigured mound, with all the unsightly appurtenances which a trolley road using the overhead wire would require."

If the complainant be correct in his contention that the construction and operation of the said line of railway would be in violation of the terms of the conveyance by which the mayor and council of Wilmington became seised of the above-mentioned parcel of land, conveyed by William P. Bancroft "for the sole use and behoof of a public park," it would follow necessarily that the grantor, the said William P. Bancroft, would be entitled to the intervention of a court of equity to enjoin such violation of the terms of the grant, irrespective of any question of damage. William P. Bancroft, however, not only refuses so to do, but as a member of the board of park commissioners, respondent in this suit, has given his assent to the occupation of the park by the said railway.

This right of a grantor to invoke the strong arm of the Court of Chancery to prevent any violation of the terms and conditions of covenants contained in the conveyance of his estate is one of the fundamental principles of the common law, a corollary of the theory of conveyances, and there is no analogy or likeness whatever between the rights of a grantor and the rights of an abutting owner in such a case as the present. The said William P. Bancroft had made his conveyance for park purposes before he had conveyed to the Woodlawn Company, from which the complainant took his conveyance, and there is no privity of contract between the complainant and the board of park commissioners, nor any theory of covenant of any sort affecting the relations of the board of park commissioners or People's Railway Company, respondent, and the complainant, whatever may be the situation of the complainant as regards the Woodlawn Company and William P. Bancroft.

It is well settled, however, that a landowner abutting upon land dedicated in any way to the uses of a public park is entitled to invoke the intervention of a court of equity to prevent the diversion of the said land from the use to which it was dedicated; but the sole ground upon which is based his standing in court, the claim which entitles him to ask for relief, is uniformly held to be that he will receive some special damage from the total or partial destruction of such public use that differs in kind from that received by the public at large, by any individual as citizen and taxpayer. It is not necessary, of course, that the damage should be great; but there must be some injury of the tangible, practical kind that courts recognize as damage. In order to determine, therefore, the right of the complainant to bring his suit, it is only necessary to consider whether he has alleged and proved such special damage.

I have examined with care every case cited by counsel, as well as many more, and in every case in which the application of an abutting landowner for an injunction was sustained, it was proved to the satisfaction of the court, or admitted, that the act enjoined amounted to the practical destruction of the park as a park, and that in consequence of such diversion or destruction considerable pecuniary damage would result to the abutting owner bringing the suit by reason of the reduction in value of his abutting property. See *Morris v. Sea Girt Land Improvement Co.*, 38 *N.J.Eq.* 804. In a note at the end of the case are collected a great number of cases upon the general question. In Woods on Street Railways, p. —, other cases are collected in a note. Complainant cites, amongst other cases, *Le Clercq et al. v. Trustees of Gallipolis*, 7 *Ohio* 218, *pt.* 1, 28 *Am. Dec.* 641; *Warren v. Mayor of Lyons City*, 22 *Iowa* 351; *Commissioners of Franklin County v. Carrie R. Lathrope*, 9 *Kan.* 458. The case of *Tulk v. Moxhay*, 11 *Beavan* 571, is an interesting and instructing case upon the general subject. In the case of *Equitable Guarantee & Trust Co. v. Donahoe*, (*Del.Ch.*) 45 *Atl.* 586, the Chancellor, in the course of a review of the development of the jurisdiction of the Court of Chancery, says: "The English and American equitable jurisprudence is a unique system, a complex interweaving of principle and precedent, of reason and experience. It has progressed by slow and

careful steps, guided always by a careful observation of the practical consequences of what had been done already. And in no department has the adherence to precedents been so marked, in no sphere of action does it behoove the equity judge to be so careful 'to keep within the ancient mere-stones,' as when there is question of wielding the tremendous power of the injunction process."

In the allegations of injury made by the complainant, which I have quoted above at length, he carefully refrains from alleging that any depreciation in the value of his abutting property, or that any pecuniary damage whatever, would result to him from the construction and operating of the railway upon the park lands in the manner indicated. Neither does he allege or claim that any such injury or detriment would result to him as abutting landowner as would be recognized to be such by the average man, whose judgment in the matter of damage is after all the standard set by the court. The Court of Chancery has never used the tremendous power of the injunction process to protect artistic sensibilities. An extension of its power into that domain would be most dangerous. Its mode of exercise would vary with the kind and degree of cultivation possessed by the individual Chancellor in matters of taste, for it is the subject of everyday observation that there are many specimens of landscape gardening and of architecture, to say nothing of sights and sounds and odors in general, which, while pleasing and agreeable to many men, are offensive in the extreme to others.

It is in evidence that the projected railway, after passing down the Rockford Road, curves along the outside edge of the park, just within its boundary line, at a distance of 657 feet from the front of complainant's house, the abutting property, at its nearest point of approach. And during this part of its course, as alleged in the affidavit above quoted, it "is plainly in sight of the abutting property owned by the said complainant, and that the said complainant can by standing upon his front doorstep plainly see a large portion of the said line of the said railway which runs through the parcel of the park aforesaid." The affidavit, as we have seen, then alleges the unsightliness of its poles and appurtenances and the marring of a grassy knoll of great beauty through which it passes. However un-

sightly and unpleasant all this may be to the complainant, it does not constitute such an injury as could be construed by this court to be the special damages which must be proved by him to entitle him to the relief for which he prays. The principles which I have laid down as governing this question are only the elementary ones governing the wielding of the injunction process. To fully illustrate and support them by citations from treatises and Reports would be tedious and unnecessary.

The respondent's counsel argued most ingeniously to show that this particular railway in this particular park is not inconsistent with the uses of a park, although no case has been produced by him holding that a railway, whether operated by steam or electricity, is not inconsistent with the uses of a public park, and several have been cited by the complainant which hold that it is inconsistent. If Mr. Bayard, as abutting property owner, had been able to show that he would receive from the proposed location and operating of the trolley such special damage as would give him standing in this court, it would be necessary for me to make an exhaustive examination of this large and most important question; but, inasmuch as the considerations which I have briefly set forth above have brought me to the conclusion that the complainant has failed to show that he has any standing in court, it becomes unnecessary, if not improper, for me to pass upon the other contention, and I am therefore constrained to decide that the motion for a preliminary injunction must be denied, for the reasons which I have indicated.

Let the order be entered accordingly.