Daniel **KOFFLER**, Plaintiff,

v.

Robert H. **McBRIDE** et al., Defendants.

Court of Chancery of Delaware,
New Castle.

Nov. 5, 1971.

O. Francis Biondi and John E. Babiarz, Jr., Wilmington, for plaintiff.

Charles F. Richards, Jr., and Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, for defendant Delaware School Auxiliary Assn.

C. Edward Duffy, Sol. for the State of Delaware, Wilmington, for all other defendants.

DUFFY, Chancellor:

Daniel Koffler (plaintiff) is the incorporator of Delaware Educational Facilities Inspection Association, a Delaware corporation which unsuccessfully sought a contract awarded by the State Board of Education. Delaware School Auxiliary Association (DSAA), a Delaware corporation which was given the contract, members of the State Board of Education, and the Secretary of the Board are defendants. After answers were filed cross motions for summary judgment were made by plaintiff and DSAA. This is the decision on the motions.

## A.

On July 22, 1970 the Governor of Delaware signed the Annual Capital Improvement Act of 1971, which is known generally as the 1971 Bond Bill. The title of the Act states:

"An Act Authorizing the State of Delaware to Borrow Money to be Used for Capital Improvements and Expenditures in the Nature of Capital Investments and to Issue Bonds and Notes Therefor and Appropriating the Moneys to Various Agencies of the State."

In § 13 the Bill provides that the State Board of Education and the local school districts shall allocate such portion of the total appropriation (for the cost of any school construction authorized by the Bill) as may be necessary for the payment of "construction inspection services." The Bill prohibits allocation for such services in an amount in excess of 1% of the total cost of a particular school construction project.

In contracting for inspection services the State Board is required by § 13(c) to "give first preference to an experienced Delaware organization, able to, and offering to provide quality services on a 'non-profit, at cost' basis and in so contracting it is not

subject to the bidding laws as prescribed by Chapter 69, Title 29 of the Delaware Code."

On September 1, 1970 the DSAA submitted a proposal for providing inspection and related services for school construction. The DSAA is a non-profit organization which since 1919 has been engaged in providing engineering, auditing and supervision for Delaware school construction contracts. That proposal offered to provide such services at cost and stated that billing for the entire program would not exceed $308,700.

On September 3, 1970 Delaware Educational Facilities Inspection Association submitted, by the plaintiff, a proposal to provide inspection services similar to that offered by DSAA for a total fee of $275,252, with the understanding that total monthly billings "may be less than" that amount.

On September 17, 1970 the State Board signed an inspection services contract with DSAA.

On November 16, 1970 plaintiff began this action as a "class action on behalf of all taxpayers of the State of Delaware to enforce certain rights for them and for the State." He seeks to enjoin the State Board from executing the contract with DSAA and a declaration that it is null and void.

B.

■ I first consider plaintiff's motion for summary judgment, which is based on the argument that § 13(c) of the Bill is void because its subject is not expressed in the title as required by Article II, § 16 of the Constitution, Del.C.Ann.

Article 2, § 16 states:

"No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

This article has been the subject of much litigation and by now its meaning is settled law.

The governing purpose of that section is to provide a reasonable person with notice as to the subject matter of a bill. In Opinion of the Justices, Del., 4 Storey 366, 177 A.2d 205 (1962), the Supreme Court said: "The fundamental purpose of the section is to prohibit the passage of sleeper legislation." More specifically, the Court said:

"* * * Suffice it to say that it is now well settled that Article II, Section 16, does not require the title of a bill to be an index of its details, or a synopsis of the means by which the bill's object is to be accomplished. The requirements of the section are satisfied if the title of the bill is sufficiently informative so as to put on notice parties interested in the general subject matter in such manner as would lead them to inquire into it."

Recently the Supreme Court has said, again, that the title of an act need not be an index of its details; the title is adequate if it "apprise[s] a reasonable person, interested in the subject matter of the legislation, sufficiently to lead him to an inquiry into the body of the bill." Wilson v. State, Del., 264 A.2d 510 (1970). See also Opinion of the Justices, Del., 194 A.2d 855 (1963).

In terms of its title, is that part of the Bill authorizing a contract for inspection services "sleeper legislation"? Or does the title give the notice which the cases require?

The title is indeed broad, but, fairly read, I think it informs as to these matters: (1) authorization to borrow money; (2) a statement of the use of such money, that is, for capital improvements and expenditures in the nature of capital investments; (3) authorization to the State to issue bonds and notes therefor; and (4) appropriation of the moneys borrowed to various State agencies. A fair inference from the language used is that the moneys would be borrowed and appropriated for purposes reasonably related to the capital improvements to be made and expenditures for those purposes. Capital improvements, of course, include

improvements to real property and it is common knowledge that inspection is made of improvements to public property. More specifically, the title includes a statement as to the "use" of the money and § 13(c) is nothing more than a limitation on that use. Hence there is a "reference" to it in the title. In my view the title sufficiently apprises or informs a reasonable person interested in capital investments authorized and funded by the Bill, or in the inspection to be made of such investments, to lead him into the body of the Bill. Wilson v. State, supra.

Since I have determined that the title of the Bill meets the requirements of our law, it follows that plaintiff's motion for summary judgment must be denied.

### C.

■ I turn now to DSAA's motion for summary judgment. It argues that plaintiff lacks standing to maintain a class action, that the rule of Court applicable to a class action has not been followed and that the claim is barred by the doctrine of sovereign immunity.

First, as to status, there is merit in DSAA's argument to the extent it is based upon the complaint and failure to comply with the rule governing a class action. As I see it, the argument should be considered in the context of a motion to dismiss the complaint, rather than on motion for a judgment which would be dispositive of the claim.

Plaintiff characterizes his complaint as a "class action on behalf of all taxpayers" and, if it be that, there is a serious procedural defect because he has failed to comply with Court Rule 23, Del.C.Ann. (which is identical to the Federal Rule); he has not shown that the complaint meets the requisites of the Rule (numerous members of the class, common questions of law or fact, adequate representation, and so on), nor has he sought a determination as to whether a class action should be maintained. On the latter point, Rule 23(c) is mandatory: "the court shall determine by order whether it [the class action] is to be so maintained." The Court may not do this merely by judicial notice, nor is a motion for summary judgment (without more) an appropriate way to have the determination made.

It is true that in Haddock v. Board of Public Education in Wilmington, 32 Del. Ch. 245, 84 A.2d 157 (1951), this Court considered an action by a taxpayer suing for himself and others of his class, but that was before Rule 23 was adopted in its present form; in short, at the time of Haddock the procedural requirements of Rule 23 were substantially different than they are now.

Plaintiff relies on Richardson v. Blackburn, 41 Del.Ch. 54, 187 A.2d 823 (1963) for the proposition that as taxpayer he has status to challenge the unlawful spending of public money. I agree. But under Richardson that status is regarded as derivative, that is, a right of the State asserted for it. While there are aspects of a derivative claim in the complaint it is difficult to tell whether plaintiff sues on that premise or as representative of a class only. While the difference may seem theoretical it is not; see, for example, the comment in Haddock where the Court said that to achieve status a taxpayer ordinarily must show loss "to his class in general." That special showing is not required in a derivative suit.

To sum up, I conclude that plaintiff will be required to (a) meet the procedural requirements of Rule 23 or (b) amend his complaint by eliminating a class claim and alleging a derivative or other basis for it. If he does neither an order will be entered dismissing the complaint.

### D.

■ As to DSAA's other arguments, I regard them as without merit. It says that a request to the Attorney General to bring suit is a prerequisite to the action; the Attorney General (through the State Solicitor) has appeared here for all defendants except DSAA and that constitutes a refusal by him (however tardy it may be) to pros-

ecute the action. Compare Piekarski v. Smith, 37 Del.Ch. 594, 147 A.2d 176 (1958); aff'd 38 Del.Ch. 402, 153 A.2d 587 (1959). And as to an estoppel upon plaintiff, I do not regard Keogh v. Mayor and City of Wilmington, 4 Del.Ch. 491 (1872) as analogous. There the plaintiff submitted a bid in a context in which he knew that the City reserved "the right to reject any and all bids." Here the corporation (not the plaintiff) merely attempted to negotiate a contract. It does not follow that, thereby, this plaintiff waived all rights he had as a taxpayer to allege a deficiency in the Bill or in the award of the contract which it authorized.

Finally, DSAA argues that plaintiff's claims are barred by the doctrine of sovereign immunity. Since plaintiff has an opportunity to amend his complaint, I conclude that a ruling should not be made on this argument at this time. I say this because if the action is derivative the doctrine does not apply since the action is for the State's benefit. Richardson v. Blackburn, supra.

DSAA's motion for summary judgment will be denied.