288 A.2d 498.

ALFRED L. ANGEL *et al. vs.* CITY OF NEWPORT *et al.*

MARCH 16, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.   This action was brought to declare null and void a written instrument executed by the City Council of the City of Newport through its mayor purporting to lease to the Newport County Chapter for Retarded Children, Inc. a portion of Miantonomi Park in that city. The plaintiffs sought further to enjoin the Newport County Chapter from taking any action or asserting any rights to the use of a portion of the park pursuant to the terms of said purported lease.   The cause was heard by a justice of the Superior Court who thereafter denied injunctive relief and granted the defendants' motion to dismiss.   From that judgment the plaintiffs are prosecuting an appeal to this court.

It appears that in July of 1921 Helen L. Phelps Stokes conveyed by deed a tract of land known as Miantonomi Hill to the city of Newport. In the deed the donor set out the following condition: "It is expressly understood and agreed and these presents and the estate hereby granted are upon the express condition that the premises so conveyed shall be forever used and maintained by the said *City of Newport* as and for a public park for the free use of the public * * *."

It further appears that in May, 1969, the city council by resolution authorized the mayor of the city to execute a lease covering a small area of the park approximating one-fortieth of the total acreage thereof to the Newport County Chapter for Retarded Children, Inc., hereinafter referred to as Newport County Chapter. When such lease was executed between the parties, the Newport County Chapter proposed to build on the leased land a facility which would provide indoor recreation for the people of Newport. Thereafter, in March, 1970, plaintiffs brought the present action, seeking to enjoin permanently the erection of any structure on the land leased by the city of Newport to the Newport County Chapter.

The question confronting us, then, is whether the city of Newport, in leasing this portion of the park to the Newport County Chapter, violated the condition of the deed of July 12, 1921, that required that the land granted be forever used and maintained as and for a public park for the free use of the public. It is to be noted at the threshold that the resolution of and the lease executed by the city to Newport County Chapter provides that the facility will be open to the use of all of the public and authorizes the lessee in no manner to charge a fee for the use thereof. We, therefore, are unable to perceive that the action of the city council in any way violates the intention of the grantor that the park be for the "free use of the public."

We turn, then, to the question of whether the leasing of a portion of the park amounting to one-fortieth of the area thereof for the erection of a facility by the Newport County Chapter for the use of retarded children violated the provision of the deed that the land granted "* * * be forever used and maintained * * * as and for a public park." The rule that has long prevailed in this country required a municipality to which land had been granted for dedication to a public use, and this is particularly true of public parks, to strictly conform to the terms of the grant as it stated the uses to which the grantor intended that it be dedicated.

However, in many cases which purported to apply the rule of strict conformity, it was clear that the courts construed strict conformity on the basis of the circumstances surrounding the change and the character of the use substituted for that originally intended. Several cases contain language which indicates that the rule of strict conformity would be violated only by changes in the use that were patently inconsistent with or violative of the use intended by the grantor. Many courts appear to have construed the rule of strict conformity as precluding only uses substituted for that stated by the grantor which were foreign to, inconsistent with, or contradictory of that stated by the grantor. In other words, the language used by many courts is clearly suggestive that, while apparently subscribing to a rule of strict conformity with the intention of the grantor, they would in appropriate circumstances hold that such rule was not breached where the new or substituted use did not patently distort, negate, or violate the intention of the grantor. *Michigan Boulevard Building Co.* v. *Chicago Park District*, 412 Ill. 350, 106 N.E.2d 359 (1952); *Baldwin Manor, Inc.* v. *City of Birmingham*, 341 Mich. 423, 67 N.W.2d 812 (1954); *Hyland* v. *City of Eugene*, 179 Ore. 567, 173 P.2d 464 (1946).

An examination of the cases discloses the emergence of a more liberal approach to the question of what changes in use would be compatible with the intent of the grantor. In *City of Hazard* v. *Eversole,* 313 Ky. 254, 230 S.W.2d 921 (1950), the court affirmatively noted that the passage of time and change in circumstances were elements that should be considered in testing the compatibility of a substituted use with the use intended by the grantor. There the court said at 258, 230 S.W.2d at 924: "Dedication is not confined to the usages known at the time. It includes the right of the public to use the property in such a way as is convenient and comfortable, according to changed conditions and methods of travel."

We believe the sound rule in these premises is stated with clarity and precision in *Biglin* v. *Town of West Orange,* 46 N. J. 367, 217 A.2d 135 (1966). There the New Jersey court specifically stated at 372-73, 217 A.2d at 138: "To violate the terms of a dedication the use made of land must be inconsistent with the purpose of the dedication or substantially interfere with it. * * * However, in interpreting the scope of the deed's limitation we are not bound by the usages prevalent at the time the dedication was made." In this case the court clearly accepted the apparently emerging concept that there is a presumption of the dedicator's intention that the property was to be used by the public, within, of course, the basic limitations of the dedication, in such a way as would make the use convenient and comfortable and according to not only the proprieties and usages known at the time of the dedication, but also to those justified by the lapse of time and change of conditions.[1] For an informative analysis of the effects of time and change on the compatibility of the substituted or changed use with the intent of the dedicator, *see Lander*

---

[1]*See* 23 Am. Jur.2d, *Dedication* §67 at 57-58 (1965).

v. *Village of South Orange,* 58 N. J. 509, 279 A.2d 633 (1971).

We hold, then, that where land has been conveyed to a municipality and dedicated to use as a public park or a public recreational area, the dedicator will be presumed to have contemplated that the manner in which the land is used to accomplish the intent of the dedicator may, with the passage of time or the alteration of circumstances, require adjustment or change if the intent of the dedicator is to be given effect under changed circumstances or new conditions. In our opinion, to rebut this presumption, it is necessary to establish that the change or variation in the use that has been made would have the effect of defeating or frustrating the basic intent of the dedicator.

Nothing in this case evidences a frustration or defeat of the dedicator's original intent. There has been no essential change in the use of the land as a park and as a place of public recreation, nor has there been any abandonment of its use as such. The action of the city council in leasing a small portion of the land does not change the basic use thereof. Rather, it continues in intensified form the use intended by the dedicator. It makes the recreational potential of the land available to retarded children, who are a part of the public but who can be provided with suitable recreational opportunities contemplated by the grantor more effectively by the provision of such facilities as the Newport County Chapter intends to erect.

It would appear from the record that Helen L. Phelps Stokes was a person of generous nature with an abiding interest in the welfare of the people of Newport. We cannot agree that, were she present at this time, she would desire to exclude retarded children from the recreational facilities provided by her gift through resort to a technical construction of the rule of strict conformity. In our opinion, the action of the city council did not frustrate or de-

feat the intent of the grantor at the time the dedication was made.

Having reached that conclusion, we are of the opinion that the action of the city council authorizing the execution of the lease was not intended to dispose of municipal properties within the purview of G. L. 1956 (1970 Reenactment) §45-2-5.[2] Therefore, the plaintiffs' contention that the lease so executed was invalid for want of findings on the part of the city council regarding the unsuitability of the land for the purpose for which it was devoted is irrelevant. Neither do we perceive any merit in the plaintiffs' contention that the action of the city council in authorizing the execution of the lease divested the Miantonomi Memorial Park Commission of control of the park. An examination of the statute creating the commission, P. L. 1921, chap. 2140, is persuasive that the Legislature intended that that commission would be an administrative agency or arm of the city council charged only with performing such duties as could be more conveniently performed by it than by the city council.

The appeal of the plaintiffs is denied and dismissed, and the judgment for the defendants is affirmed.

*Vernon A. Harvey,* for plaintiffs.

*Moore, Virgadamo, Boyle & Lynch, Jeremiah C. Lynch, Jr.,* for defendants.

---

[2]Section 45-2-5 reads as follows: "In addition to the powers heretofore granted by charter or the public laws of the state with respect to the purchase and sale of land, the city council of any city and the town council of any town, if it shall see fit so to do, is hereby authorized, from time to time, to sell, lease, convey or use for any other public or municipal purpose or purposes, or for any purpose whatsoever, any lands or properties owned by said city or town, which have been purchased, acquired, used or dedicated in any manner for municipal or other public purposes, whenever, in the opinion of said city council or town council, said lands or properties have become unsuitable or have ceased to be used for such purposes."