The CITY OF WILMINGTON, By and Through the WATER DEPART-MENT, Plaintiff,

v.

Edwin C. E. LORD, Jr., et al., Defendants.

Superior Court of Delaware, New Castle.

Sept. 6, 1974.

Frank J. Gentile, Jr., Acting City Sol., Wilmington, for plaintiff.

William Poole, Robert K. Payson, David A. Anderson, Potter, Anderson & Corroon, Wilmington, for defendants.

## OPINION

O'HARA, Judge.

This is a condemnation action brought by the City of Wilmington in an effort to acquire a site on the Greenhill Golf Course for the construction of a 500,000 gallon elevated water tank. Certain of the named defendants have responded to the action and have filed a motion to dismiss.

By deed dated December 18, 1958, William duPont, Jr. and Margaret Osborne duPont, his wife, made a gift to the City of Wilmington of a tract of land now known as the Greenhill Golf Course. Included in the deed was a restriction that "[t]he foregoing conveyance is made upon the condition that the above described lands and premises to be used for public park purposes". The City Council of the City of Wilmington on December 18, 1958, accepted the aforesaid deed with the express recognition that the lands and premises conveyed thereby were "to be used exclusively for public purposes as a park". From December 18, 1958 to the present time the aforementioned tract of land has been laid out as a public golf course, administered as a public park and recognized as parkland on all official City maps.

The initial litigation in connection with the proposal to erect a water tank on the tract in question occurred when action was filed in the Court of Chancery (Lord, et al. v. City of Wilmington, No. 4487 Civil Action 1973). In that action Vice Chancellor William Marvel preliminarily enjoined the City from constructing the water tank based upon the Court's conclusion that the area in question is parkland, held in an express or tacit trust for the public, and may not be used for a purpose inconsistent with its perpetual status as such, particularly where, as here, the lands were conveyed on condition that they be maintained as parkland. He concluded further that the tower and tank here proposed did constitute a breach of the conditions set by the donors. In other words, Vice Chancellor Marvel has preliminarily held that the subject property is held by the City in trust and that the erection of the proposed elevated water tank would constitute a violation of that trust.

Vice Chancellor Marvel on the basis of comity refused to enjoin the City from prosecuting this action. As a consequence the issue before this Court is whether or not the City of Wilmington may condemn a property, which it holds in trust for a particular use, in order to change such use, in part, for the erection of the proposed water tank.

It is a general principle of law that restrictions in a private individual's deed donating a park to a government must be strictly construed against the government. Hyland v. City of Eugene, 179 Or. 567, 173 P.2d 464 (1946); McVean v. City of Elkins, 127 W.Va. 225, 32 S.E.2d 233 (1944); Bernstein v. City of Pittsburgh, 366 Pa. 200, 77 A.2d 452 (1951). Typical of the decisions on this point is City of Buffalo v. Day, Erie Co. Supr., 8 Misc.2d 14, 162 N.Y.S.2d 817 (1957). Therein the court dismissed a condemnation action wherein the City of Buffalo was attempting to convert a property held exclusively as public park into uses primarily educational. See also Poole v. Commissioners of Rehoboth, Del.Ch., 9 Del.Ch. 192, 80 A. 683 (1911).

The cases relied upon by the City in support of its position that it has a right to condemn in this instance are all cases in which the condemning authority had specific authority and power to condemn with

respect to public property or property held in public trust. No cases have apparently been found which would support the right of the City to condemn in violation of a specific trust, as here found, in the absence of such specific statutory authority.

However, the City urges that Wilmington Code § 18–4 gives it sufficient authority and power either directly or by inference, which section reads as follows:

"The city acting by and through the agency of the board of water commissioners, shall have power to acquire by purchase or condemnation as hereinafter provided, *any lands,* buildings, structures, franchises, easements, highway, roads, ways, bridges, waters, water rights *or any other property, real or personal, of whatever nature,* in the county, as may be necessary for furnishing to the city a supply of pure and wholesome water adequate to meet the present and future needs of the said city." (Emphasis supplied).

Here the City is seeking to have the Court draw a conclusion from the language of this section of the Wilmington Code which would be in derogation of the cases and authorities, without exception, that conclude that a municipality may not condemn property which it holds for one purpose in order to use the property for another purpose without explicit statutory authority.

■ The general rule is based upon the notion that a condemning authority should be restricted with respect to the uses of property held by it and that only when a demanding public need is present, as determined by legislative action rather than the action of the condemning authority, should it be permitted to change the purposes for which such lands are held. Typical of the kind of legislative authority required is found in such instances as in the Wilmington Code itself, § 16 through § 28, which gives to the City express authority to condemn "property already devoted to a public use" if it is deemed necessary for a rede-velopment project. Also, Piekarski v. Smith, Del.Supr., 38 Del.Ch. 402, 153 A.2d 587 (1959) was a decision in this jurisdiction, which authorized the taking of public property for the purpose of the construction of an interstate highway but, it is important to note, this decision was based upon the fact that a statute specifically granted the power to take such public property.

■ The City also contends, as a general right, that it should be permitted to make use of the public lands in question in view of the fact that the City's water system is so complex. This argument is unsupported by authority and is unconvincing.

■ Additionally, the City argues that the case here presented is one involving individual property owners rather than any competing condemning authority and that, therefore, a different rule should apply. This spurious argument was properly discarded in City of Torrington v. Coles, 155 Conn. 199, 230 A.2d 550 (1967).

■ In summary, the City in its efforts to condemn the property here held by it in trust for public park purposes and to change that use, at least in part, for the purposes of erecting a water tank, is unsupported by any relevant and persuasive authority. The City has not been granted by legislative action the specific power to condemn such lands for other purposes. Its contention that the condemning authority has been granted such power with respect to the supplying of water is not convincing. The law is settled that without express statutory authority a municipality cannot, on its own, determine that a public use contemplated is so vital that it can ignore or disregard the restrictive convenants of a grant to it of property for a designated use only.

For the reasons herein briefly set forth the Court concludes that defendants' motion to dismiss should be granted.

It is so ordered.