MARVEL, Vice Chancellor:
 

 Plaintiffs in this case are citizens and taxpayers of New Castle County and State of Delaware and have brought this action to enjoin the diversion of park land to an alleged non-park use suing not only on their own behalf but also on behalf of other citizens and taxpayers of the County similarly situated.
 
 [1]
 
 Defendant is a municipal corporation and the owner of the tract of land here in issue, on part of which it proposes to construct a steel water tank and tower having an elevation of approximately one hundred feet and a capacity of five hundred thousand gallons of water, to which plaintiffs object on the ground stated and against the construction of which plaintiffs now seek permanent injunctive relief.
 

 On December 18, 1958, the late William duPont, Jr., and his then wife, Margaret Osborne duPont, conveyed a tract of land consisting of some one hundred eight acres, now known as the Greenhill Golf Course, the tract having been previously leased to a private club. Such grantors, on the same date, also assigned their rights as lessors of such tract. On January 19, 1959, an additional contiguous area of land, consisting of some fifteen acres was also conveyed to defendant by Mr. and Mrs. duPont.
 

 The aforesaid deeds from Mr. and Mrs. duPont to the City provided:
 

 “The foregoing conveyance is made upon the condition that the above described lands and premises be used for public park purposes.”,
 

 the conveyances in question having been made pursuant to the provisions of 1 Wilmington C., section 15-1, which provide that the City shall have the power to acquire lands by deed or devise in an area within five miles of the City :
 

 “ * * * for the purpose of providing and maintaining one or more open places or parks for the promotion of the health and recreation of the people of the City and its vicinity.”
 

 There is no express provision for the reversion of title to the lands in question to the donors in the event of a breach of the aforesaid condition, compare Howe v. City of Lowell, 171 Mass. 575, 51 N.E. 536, and neither Mr. duPont’s estate nor Mrs. du-Pont is a party to this proceeding.
 

 Since the acquisition of the lands in question in December 1958 and January, 1959, the City has maintained them as a public golf course or park, City Council having on December 18, 1958 adopted a resolution of acceptance of the larger tract in which Mr. and Mrs. duPont were thanked for their generosity in making such lands available for use
 
 “
 
 * * * exclusively for public purposes as a park.”, and I have no doubt but that the area in
 
 *415
 
 question is park land and that, generally speaking, park land held in an express or tacit trust for the public may not be used for a purpose inconsistent with its perpetual status as park land for the benefit of the public, Anderson v. Mayor and Council of Wilmington, supra, particularly where, as here, lands have been conveyed on condition that they be maintained as park land, Hyland v. Eugene, 179 Or. 567, 173 P.2d 464, and 10 McQuillin, Municipal Corporations, § 28.58a (3rd Ed.Rev.)
 

 On the other hand, courts have permitted intrusions into park land for a number of related purposes. Thus, the use of a public park for agricultural purposes, Huff v. Macon, 117 Ga. 428, 43 S.E. 708, for bridle paths and winter sport facilities, Rivet v. Burdick, 255 App.Div. 131, 6 N.Y.S.2d 79, and even the building of cottages and tourist camps, State ex rel. Minner v. Dodge City, 123 Kan. 316, 255 P. 387, have been held not to be improper diversions of park land, being uses allied to traditional park activities.
 

 Defendant, which initially did not appear to question the capacity of the plaintiffs to sue but now does, but see Fetters v. Mayor and Council of Wilmington, 31 Del.Ch. 338, 73 A.2d 644, and Anderson v. Mayor and Council of Wilmington, supra, in opposing the entry of a preliminary injunction and in arguing for a dissolution of an outstanding restraining order, contended that the Water Department of the City of Wilmington is empowered by 1 Wilmington C., section 1803 to acquire by purchase or by condemnation both water and lands for the purpose of furnishing adequate water for the needs of residents of the City and those residing within ten miles of the boundaries of the City and that plaintiffs, who object to the City’s project, had an adequate remedy at law for damages. Defendant argued that, in any event, the City could accomplish its purpose, namely that of furnishing adequate supplies of water to residents of the City and its environs by condemnation, if necessary. But see contra City of Wilmington v. Lord, Del.Super., 325 A.2d 371.
 

 Defendant also pleads laches, alleges that the restriction in the duPont deed is ambiguous, that plaintiffs have not exhausted their administrative remedies, and contends that the water tower and tank in issue are, first of all, necessary for the proper irrigation and maintenance of the public park known as the Greenhill Golf Course, as well as for the safety and water needs of the residents of Westover Hills and the general area bordering Kennett Pike up to Kirk Road, a need which will be allegedly aggravated, during the period in which Rockford Tower is undergoing much needed repairs.
 

 However, I am satisfied, on the basis of the documents before me, that the creation of a reserve for needed water pressure for fire safety and domestic use in the residential area above referred to is the predominant purpose behind the project here in issue and that the availability of additional water for the golf course as a result of the erection of the tower and tank would be merely an incidental consequence of such intrusion into park land.
 

 On June 12, 1974, this Court, on plaintiffs’ motion for the granting of a preliminary injunction, granted such form of relief, Unreported Opinion, Ct. of Ch., May 16, 1974. Subsequently, the City brought a condemnation action in Superior Court for the purpose of acquiring by eminent domain the right lawfully to construct the water tank and tower in park land. In such proceeding, which this Court declined to restrain, Unreported Opinion, Ct. of Ch., July 22, 1974, the Superior Court dismissed the complaint, holding that the City may not condemn property held by it in trust for public park purposes in the absence of express statutory authority granting it power to do so. See City of Wilmington, Water Dept. v. Lord, supra. Both plaintiffs and defendants have now moved for summary judgment on the basis
 
 *416
 
 of their respective contentions as to the undisputed material facts of record.
 

 To begin with, defendant contends that summary judgment must be granted against the Lewis and Conklin plaintiffs inasmuch as they have not introduced into the record any evidence of special damages, evidence which is allegedly necessary to accord them standing to sue to protect park land from diversion to other uses, Bayard v. Bancroft, 38 Del.Ch. 50, 62 A. 6. Furthermore, defendant contends that the evidence submitted by the Lord plaintiffs as to their alleged special damages has been effectively rebutted by the affidavit of defendant’s expert witness and that accordingly summary judgment must also be entered against the Lord plaintiffs.
 

 Plaintiffs argue, on the other hand, that the cases of Anderson v. Mayor and Council of Wilmington, supra, and Fetters v. Mayor and Council of Wilmington, supra, which hold that taxpayers as such have standing to seek the enjoining of a threatened illegal act of the City, control here. Additionally, plaintiffs contend that under the rationale of the better reasoned precedents, as landowners with property abutting on and near to the park, they have standing to seek the enjoining of a threatened diversion of park land to a non-park use without having to establish special damages. See Riverside v. MacLean, 210 Ill. 308, 71 N.E. 408, and Nichols v. Rock Island, 3 Ill.2d 531, 121 N.E.2d 799.
 

 In any event, in my opinion, notwithstanding the strictures of Bayard v. Bancroft, supra, plaintiffs, as taxpayers, do have standing to sue here regardless of what special damages they have been able to adduce flowing from the possible use of public park land for an improper purpose, Anderson v. Mayor and Council of Wilmington, supra, Fetters v. Mayor and Council of Wilmington, supra, Haddock v. Board of Public Education in Wilmington, 32 Del.Ch. 245, 84 A.2d 157, Richardson v. Blackburn, supra, and Koffler v. McBride, supra. See also 18 McQuillin, Municipal Corporations § 52.37 (3rd Ed.Rev.), 74 Am.Jur.2d, Taxpayers’ Actions, § 18, Taxpayers’ Suits: A Survey and Summary, 69 Yale L.J. 895, and 50 Harvard L. Rev. 1276.
 

 Thus, it is established that a Delaware taxpayer has standing to challenge the unlawful expenditure of public money presumably because of his direct interest in the proper application of tax receipts. See Richardson v. Blackburn, supra, and Koffler v. McBride, supra, and by analogy the taking of property held in trust for the public should, in my opinion, be similarly subject to challenge. In the case of Haddock v. Board of Public Education in Wilmington, supra, the statute in issue provided that a contract with said agency could not be awarded on a bid which did not name all of the subcontractors to be engaged on the project. Following the award by the Board of Education of a contract to the lowest bidder, a taxpayer sued, seeking an injunction against its carrying out on the ground that the bid had not listed subcontractors, and claiming that therefore the Board had acted illegally. The Court, addressing itself to the issue of a taxpayer’s standing to sue, noted that while the taxpayer would not have suffered any direct pecuniary loss as a result of the Board’s action, that, unless a taxpayer’s action were to be permitted to proceed, the governmental agency’s threatened violation of the law would have been allowed to take place and the rights of taxpayers and the public in general injured.
 

 Plaintiffs here, as in the above cited case, have not demonstrated that as taxpayers they will.suffer any direct and immediate pecuniary loss as a result of the erection of a tower and water tank on the park land in issue, their case for damages being based on expert testimony of probabilities. However, in my opinion, unless plaintiffs, as taxpayers, are accorded standing to seek to obtain an order enjoining an improper diversion of park land to
 
 *417
 
 a non-park use, then the general right of taxpayers and of the public at large to have park land devoted to park uses would have no guarantee of protection, at least in the absence of any protective action on the part of the Attorney General. Compare Cannon v. Stephens, 18 Del.Ch. 276, 159 A. 234 with Pollock v. Peterson (Del.Ch.), 271 A.2d 45, and see Fetters v. Mayor and Council of Wilmington, supra, and Richardson v. Blackburn, supra.
 

 Concededly, the holding in the case of Bayard v. Bancroft, supra, is that only abutting landowners able to show special damages may seek to have an alleged improper use of park land enjoined. However, in a situation such as the one here there is no guarantee that abutting landowners will sue or be able to establish special damages in every case. In other words, this Court, in deciding the case of Anderson v. Mayor and Council, adopted a public trust theory, namely that the City held the land there in issue in trust for public park purposes, and went on to hold that members of the public are the beneficiaries of such trust. Therefore, use of the land in issue for other than park purposes was barred short of legislative action. In short, if taxpayers are not to have standing to sue to protect lands held in trust for the public in situations in which abutting landowners fail to sue, the public as the beneficiary of such trusts is without redress when the public title owner threatens to breach its trust at least in the absence of action by the Attorney General. See Haddock v. Board of Education, supra, in which the rights of taxpayers and the public in general would have been left unprotected in such a situation, had the Court not acted on plaintiffs’ complaint. I am accordingly of the opinion that the strict rule of Bayard v. Bancroft, supra, does not apply here and that the holding in Anderson v. City of Wilmington, supra, does. See also Davenport v. Buffington (CA8), 97 F. 234, Archbold v. McLaughlin (D.D.C.), 181 F.Supp. 175, Stratton v. Riverton, 74 Wyo. 379, 287 P.2d 627, Board of Trustees of Philadelphia Museums v. Trustees of University of Pennsylvania, 251 Pa. 115, 96 A. 123, Payne v. Kassab, 11 Pa. Cmwlth. 14, 312 A.2d 86, Bernstein v. Pittsburgh, 366 Pa. 200, 77 A.2d 452, Phillips v. Ober, 197 Md. 167, 78 A.2d 630, 632, Green v. Garrett, 192 Md. 52, 63 A.2d 326, and Clapp v. Town of Jaffrey, 97 N. H. 456, 91 A.2d 464 at 467.
 

 Next, the cases cited by the City in support of its contention that the erection of the tower and tank in question would be consistent with public park land purposes are all distinguishable, namely City of Tacoma v. Welcker, 65 Wash.2d 677, 399 P.2d 330, City of Tacoma v. Misqually Power Co., 57 Wash. 420, 107 P. 199, Norton v. Lowden (CA10) 84 F.2d 663, 1936, and Chicago and N.W. Railway Co. v. City of Racine, 200 Wis. 170, 227 N.W. 859, all of which were concerned with proceedings instituted by municipalities for the condemnation of property for public use. While, in City Council of Greenville v. Thomas, 241 Miss. 633, 131 So.2d 659, and Caldwell v. Seattle, 75 Wash. 565, 135 P. 470, the park lands in issue had been purchased for a consideration and not, as here, donated as park land. Thus, the rule calling for strict construction of deed restrictions in the case of a gift, as it were, in trust, was not applicable.
 

 Similarly, in Spires v. City of Los Angeles, 150 Cal. 64, 87 P. 1026, the city itself had dedicated the lands in issue to park purposes. In addition, the proposed construction of the library in question increased the variety of recreational facilities which the park had to offer. In Angel v. City of Newport, 109 R.I. 558, 288 A.2d 498, the construction of a facility for the use of retarded children on park land merely made the recreational potential of the park available to retarded children. While in Ferry v. City of Seattle, 116 Wash. 648, 200 P. 336, rev’d 116 Wash. 648, 203 P. 40, the City had purchased the park land in issue in a transaction in which the seller had imposed no restrictions on its use.
 

 
 *418
 
 The City’s argument that plaintiffs have an adequate remedy at law, presumably through an inverse condemnation action for damages caused by the City’s taking, is also without merit because, as noted above, a threatened diversion of park property to an inconsistent use is an imminent breach of trust subject to being enjoined, Anderson v. Mayor and Council of Wilmington supra, and 11 McQuillin, Municipal Corporations, § 33.74 at n. 71, (3rd Ed.).
 

 Finally, the City contends that plaintiffs’ action is barred by laches or acquiescence. However, the record clearly discloses that plaintiffs did not unreasonably delay the filing of their action. The Maintenance Corporation of Westover Hills was notified of the City’s proposal to erect the tower on May 31, 1973, (See Maitland affidavit), and this suit was begun less than a year later at a time when the City, despite advance preparations, could have acquired another and uncontroversial site for the erection of the tank and water tower in issue. Finally, there is no evidence of acquiescence in the record. Accordingly, there being no material facts in dispute, plaintiffs’ motion for summary judgment will be granted and defendant’s motion denied.
 

 Order on notice.
 

 [1]
 

 . Plaintiffs not having made any effort to comply with the provisions of Rule 23, Del.C. Ann., pertaining to the bringing of a class action, their case will be considered as one brought by the plaintiffs on their own behalf as taxpayers, Anderson v. City of Wilmington, 37 Del.Ch. 74, 137 A.2d 521, or, in the alternative, deemed to be derivative in nature as being brought for the benefit of the City, which is here represented by the City Solicitor and thus obviously unwilling to intervene on plaintiffs’ side to prevent the alleged spoliation of its own public park land. Compare Richardson v. Blackburn, 41 Del.Ch. 54, 187 A.2d 823, and Koffler v. McBride, Del.Ch., 283 A.2d 855.