The CITY OF WILMINGTON, a Municipal Corporation of the State of Delaware, Defendant Below, Appellant,

v.

Edwin C. E. LORD, Jr., Mary D. Lord, Davis L. Lewis, Eugenia H. Lewis, David H. Conklin, and Jeanette Conklin, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted June 17, 1977.

Decided Sept. 21, 1977.

---

John R. Sheridan, Asst. City Sol., Wilmington, for defendant below, appellant.

William Poole of Potter, Anderson & Corroon, Wilmington, for plaintiffs below, appellees.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice.

Defendant, City of Wilmington, appeals from the granting of a permanent injunction by the Court of Chancery prohibiting the City from building a water tank on land conveyed to the City for use as a public park. The appeal represents the culmination of a continuing battle between plaintiffs, suing in their capacity as citizens and taxpayers, attempting to stop what they consider to be a misuse of public property, and the City of Wilmington attempting to construct what it sees as a conforming use on park land. There being no dispute as to the material facts the Court below decided the controversy on cross motions for summary judgment. The City raises several issues on appeal which shall be treated seriatum, but for the reasons set out of the following paragraphs we affirm.

I

In the years 1958 and 1959 the late William duPont, Jr. and his wife, Margaret Osbourne duPont, conveyed two contiguous tracts of land, totaling approximately 124 acres in area, to the City of Wilmington. The grantors also assigned their rights as lessors of this tract to the City. The land, now known as Greenhill Golf Course, was conveyed as a gift upon the express condition contained in the deeds to the property that the land be used for "public park purposes." [1] The City accepted the gift pursuant to the grant of power contained in 1 Wilmington C., Section 15–1 giving the City authority to acquire real property by deed or devise in an area within five miles of the City " . . . for the purpose of providing and maintaining one or more open places or parks for the promotion of the health and recreation of the people of the City and its vicinity."

Since acquisition, the lands in question have been maintained by the City and used by the public as a park and golf course. It has been recognized on all official City maps as park land. Defendant now proposes to build upon this park property an elevated steel water tank and tower having a capacity of 500,000 gallons and a height of one hundred feet. Plaintiffs object to the building of the water tank as a use of public park property in violation of the public trust and the express deed restriction contained in the grant to the City.

II

Defendant's initial challenge is to plaintiffs' standing to bring this suit, citing *Bayard v. Bancroft*, 38 Del.Ch. 50, 62 A. 6, which held that only abutting landowners who can show special damages have standing to enjoin improper use of park land. Plaintiffs respond to this argument by asserting both that Delaware law has evolved to the point where a taxpayer, as such, may sue to enjoin alleged illegal action of a governmental body, and in any event they have exhibited special damages to meet the test of *Bayard v. Bancroft*, supra. We need not address the latter contention since it is our opinion that a taxpayer does have standing to sue to enjoin the unlawful expenditure of public money, or misuse of public property, regardless of any showing of special damages. *Koffler v. McBride*, Del.Ch., 283 A.2d 855 (1971); *Richardson v. Blackburn*, 41 Del.Ch. 54, 187 A.2d 823 (1963); *Anderson v. Mayor and Council of Wilmington*, 37 Del.Ch. 74, 137 A.2d 521 (1958); *Haddock v. Board of Education in Wilmington*, 32 Del.Ch. 245, 84 A.2d 157; *Fetters v. Mayor and Council of Wilmington*, 31 Del.Ch. 338, 73 A.2d 664 (1950).

A taxpayer has a direct interest in the proper use and allocation of tax receipts. That interest gives the taxpayer a sufficient stake in the outcome of the suit to allow him to challenge improper uses of tax funds. In this case the alleged illegal activity involves the use not of public funds,

---

1. The actual wording of the deed provision was as follows: " . . . the foregoing conveyance is made upon the condition that the above described lands and premises be used for public park purposes."

but of public property, held by the City in trust for public park purposes. The improper use of publicly held real property is sufficiently analogous to the improper use of public money so that if a taxpayer has a legal right to sue in the latter case, then necessarily a taxpayer should have a similar right in the former case. *Anderson v. Mayor and Council of Wilmington,* supra; see also *People ex rel. Hamer v. Board of Education of School District No. 113,* 22 Ill. App.3d 130, 316 N.E.2d 820 (1974); *Paepcke v. Public Building Commission,* 46 Ill.2d 330, 263 N.E.2d 11 (1970), and *Codman v. Crocker,* 203 Mass. 146, 89 N.E. 177 (1909). In addition, if suit by taxpayers is not allowed, the governmental action questioned will likely go unchecked, at least in the absence of action by the Attorney General. See *Fetters v. Mayor and Council of Wilmington,* supra, and *Richardson v. Blackburn,* supra.

The case of *Anderson v. Mayor and Council of Wilmington,* supra, is especially instructive on the standing issue raised here, since the facts of *Anderson* and the case at hand are so similar. Relying on *Fetters v. Mayor and Council of Wilmington,* supra, the Court in *Anderson* specifically held that a plaintiff had standing as a taxpayer to bring suit to enjoin the sale of land held by a municipality in trust for park purposes, as such a sale was a breach of that trust. The Court described a taxpayer's right to sue under facts as alleged in *Anderson* as "well established."

■ The conflict between the case of *Bayard v. Bancroft,* supra, and its special damage standing requirement, and the line of cases including *Fetters* and *Anderson* where no such requirement was made is apparent. It is equally apparent that because of the direct interest of taxpayers of a municipality in the use of lands held in public trust, and because of the impracticality of any other form of enforcement of that trust, the line of cases granting a taxpayer standing to sue to enjoin the misuse of public

monies or public property sets forth the better rule of law. Therefore, we hold that a taxpayer must be accorded standing to sue to challenge the misuse of property held in trust for the public.[2]

## III

Defendant's second argument on appeal is that the park land in question, although held in public trust, may be used for a legitimate public purpose which is a non-park usage where the usage is incidental to the maintenance of the park. In essence defendant contends that a non-park use of land, which the City is required by law to use as a park, is legal as long as there may be some subsidiary benefit to the park conferred by the disparate use. According to the defendant the incidental benefit to the park from the erection of the tower and tank in question makes the non-park use consistent with park purposes and therefore, legitimate. Defendant also interweaves into these arguments the assertion that the public trust may be violated to meet an important public need.

■ Unquestionably the acquisition and maintenance of a public water supply is an important public project and the use of land in such a project is a public use. See 11 McQuillin, *Municipal Corporations,* Section 32.63 (3rd Ed.). We may assume that the proposed water tank project here is necessary to promote and protect the health, safety and welfare of the public, and therefore, a reasonable exercise of the police powers delegated to the City of Wilmington. However, the fact that the proposed water tank is a proper public use does not control the issue of whether the tank may be built on property dedicated as a public park without violating the trust in which the land is held.

■ The grantors of the property in question explicitly conditioned the gift on the use of the land granted as a public park. In accepting the property the City acknowl-

---

**2.** It is disputed that all plaintiffs live within the limits of the City of Wilmington, but the issue need not be resolved here since at least some of the plaintiffs admittedly live within the city limits and have standing to bring this action.

edged the condition and have used the land in compliance therewith to date. Thus the park land was and is still held in an express or tacit trust for the public, and because the land is so held it may not be used for a purpose inconsistent with its legal character as park land. *Anderson v. Mayor and Council of Wilmington*, supra; *Dunphy v. Commonwealth*, Mass., 331 N.E.2d 883 (1975); 10 McQuillin, *Municipal Corporations*, 328.52 (3rd Ed.).

█ Further, it is the general rule that in determining any inconsistency of use, restrictions in a deed given by a private individual donating land as a park must be strictly construed against the donee-government. *City of Wilmington, Water Department v. Lord*, Del.Super., 325 A.2d 371 (1975); *Hyland v. City of Eugene*, 179 Or. 567, 173 P.2d 464 (1946).

█ The question for decision then is whether the proposed water tank is a use of the land consistent with its character as a park. The Chancellor in this action made the specific finding that:

".  .  . I am satisfied on the basis of the documents before me that the creation of a reserve for needed water pressure for fire safety and domestic use in the residential area  .  .  . is the predominant purpose behind the project here in issue and that the availability of additional water for the golf course as a result of the erection of the tower and tank would be merely an incidental consequence of such intrusion into park land."

This factual determination of the Chancellor is based upon adequate support contained in the record of these proceedings, and must be sustained on appeal. As an incidental use the tower is inconsistent with park purposes, and the building of the tower on public park land constitutes a breach of the public trust. Such a breach is legally intolerable regardless of any justifications based upon a general public need, and, therefore, an injunction is a proper remedy to prevent such a breach.

## IV

█ Defendant also seeks to raise several equitable defenses including laches and acquiescence to bar plaintiffs' action. The record below clearly demonstrates, and the Chancellor so held, that plaintiffs openly and consistently opposed the water tank project from its inception. The Chancellor's factual determination that plaintiffs prosecuted this action with due diligence is supportable and correct and should not be disturbed on this appeal.

█ Defendant also asserts that the Court of Chancery was without jurisdiction in this case since a court of equity may not act where plaintiffs have an adequate remedy at law. *Chavin v. H. H. Rosin & Co.*, Del.Supr., 246 A.2d 921 (1968). However, it is plain that any action for money damages on a theory of inverse condemnation is wholly inadequate to remedy a breach of public trust. *Anderson v. Mayor and Council of Wilmington*, supra; *Richardson v. Blackburn*, supra (describing a taxpayer's action is derivative, and, therefore, subject to equity court jurisdiction). It was appropriate for the Court of Chancery to assert jurisdiction and act under the facts presented in this case.

## V

█ We conclude that where property is held under an express trust for public park purposes, a taxpayer has standing to sue to enjoin on alleged violation of that trust. Park land so dedicated may not be diverted for non-park usage, and the public trust may not be violated to meet a general public need. Because the proposed water tank would be a use inconsistent with the character of the park land here, the Court of Chancery properly enjoined the project.

Affirmed.