# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GERALD A. LECHLITER, )
                                   )
            Plaintiff, )
                                   )
    v.                           )   C.A. No. 10430-VCG
                                   )
DELAWARE DEPARTMENT OF )
NATURAL RESOURCES ("DNREC"), )
DNREC DIVISION OF PARKS AND )
RECREATION, DELAWARE )
DEPARTMENT OF )
TRANSPORTATION, THE MAYOR )
AND COUNCIL OF THE CITY OF )
LEWES, J.G. TOWNSEND, JR. & CO., )
LINGO ASSET MANAGEMENT, LLC, )
LEWES UNLEASHED ASSOCIATION, )
and LIFETIME LIVING, LLC, )
                                   )
          Defendants. )

## MEMORANDUM OPINION

Date Submitted: August 17, 2015
Date Decided: November 30, 2015

Gerald A. Lechliter, Lewes, DE, *Pro Se Plaintiff*.

Stephen E. Smith and Glenn C. Mandalas, of BAIRD MANDALAS BROCKSTEDT, LLC, Dover, DE, *Attorneys for Defendants the Mayor and Council of the City of Lewes*.

Ralph K. Durstein, III, Devera B. Scott, and William J. Kassab, of DEPARTMENT OF JUSTICE, Wilmington, DE, *Attorneys for Defendants DNREC, DNREC Division of Parks and Recreation, and Delaware Department of Transportation*.

David C. Hutt and Eugene H. Bayard, of MORRIS JAMES LLP, Georgetown, DE, *Attorneys for Defendants J.G. Townsend, Jr. & Co. and Jack Lingo Asset*

*Management, LLC.*

Robert W. Whetzel and Travis S. Hunter, of RICHARDS LAYTON & FINGER, P.A., Wilmington, DE, *Attorneys for Defendant Lewes Unleashed Association.*

GLASSCOCK, Vice Chancellor

The Plaintiff here, Colonel Gerald A. Lechliter, is a resident of Lewes. His home is situated on a quiet cul-de-sac, and his property abuts a parcel of land once part of a planned, but never used, industrial park owned by the University of Delaware. The land was acquired from the University by the State Department of Natural Resources and Environmental Control ("DNREC"), and the portion nearest the Lechliter property was leased by DNREC to the City of Lewes for use as open space. The City, in turn, has permitted a non-profit organization, Lewes Unleashed Association, to "develop"—that is, clear of brush and fence in—a small parcel of the land as a dog park, an area where members of the public can allow their dogs to run freely and safely. Lechliter, used to having this area in close proximity to his property exist as unoccupied brushland, is concerned that traffic and the baying of the happy dogs in the park will, once the park is completed and opened, interfere with his quiet enjoyment of his home and constitute an actionable nuisance. He brought this action, seeking equitable relief to prevent the construction or use of the dog park.

To the extent this action sounds in nuisance, I have already dismissed those claims, without prejudice, as premature. Lechliter, however, has raised an extraordinary number of objections to the process by which the dog park was approved. In researching these issues, he apparently discovered what he characterizes as numerous other irregularities in the use, by the City, the State, and

1

other entities, of other parts of the old industrial park parcel—unrelated to the dog park—which he seeks to litigate as well. He filed his Amended Complaint on January 20, 2015, naming as defendants the City of Lewes, several State entities, and a handful of businesses with interests in the property near the dog park. Most of the Defendants moved to dismiss, and those motions were briefed and argued. I granted some of the motions and denied one in part from the bench; this Memorandum Opinion addresses the remaining Motions to Dismiss.

## I. BACKGROUND[1]

*A. The Parties*

The Plaintiff, Colonel Gerald A. Lechliter, resides at 44 Harborview Road in Lewes, Delaware.

The Defendants include the Mayor and Council of the City of Lewes (the "City"); the Delaware Department of Natural Resources and Environmental Control ("DNREC"), a Delaware state agency; the Department of Parks and Recreation, a division of DNREC; the Delaware Department of Transportation ("DelDOT"), a Delaware state agency (collectively with DNREC, the "State"); J.G. Townsend, Jr. & Co. ("Townsend"), a Delaware corporation located in Georgetown, Delaware; Jack Lingo Asset Management, LLC ("Lingo"), a Delaware limited liability

---

[1] The facts are drawn from the allegations of the Plaintiff's Amended Complaint (the "Complaint" or "Compl.") and all documents incorporated by reference therein, and are presumed true for the purposes of evaluating the Defendants' Motions to Dismiss.

company located in Rehoboth Beach, Delaware; Lewes Unleashed Association ("Unleashed"), a private, non-profit organization located in Lewes, Delaware; and Lifetime Living, LLC ("Lifetime"), a Delaware limited liability company located in Wilmington, Delaware.

*B. Overview*

On July 19, 2002, DNREC purchased 260.94 acres of land (the "Land")—lying generally east of Canary Creek, between New Road and Pilottown Road in Lewes, Delaware, and adjacent to the Plaintiff's property—from the University of Delaware for "active and passive recreational use."[2]  In March 2006, DNREC and the City executed a lease (the "Ground Lease"), whereby the City leased from DNREC 66.34 acres of the Land (the "Leased Premises") that it designated as open space ("Open Space").[3]  Pursuant to the Ground Lease, the City was required to establish, with the participation and commentary of State representatives, a Development and Use Plan ("D&U Plan") for the Leased Premises.[4]  The Ground Lease also gives the City the authority to sublease portions of the Leased Premises

---

[2] Compl. ¶¶ 1, 10.
[3] *Id.* at ¶ 10.  "Open space" is defined under 7 *Del. C.* § 7504(6) as:
    any open lands characterized by (i) great natural scenic beauty, or (ii) whose existing openness, natural condition or present state of use, if retained, would maintain important recreational areas and wildlife habitat, and enhance the present or potential value of abutting or surrounding urban development, or would maintain or enhance the conservation of natural or scenic resources, including environmentally sensitive areas.
[4] Compl. ¶ 11.

3

"to organizations that are engaged in recreational, environmental or natural resource pursuits," provided the use supports the D&U Plan.[5]

In November 2011, the City approved a concept, put forth by Unleashed, for the creation of a dog park (the "Dog Park").[6] A portion of the Leased Premises was mentioned as a possible location for the Dog Park as early as December 15, 2011, in correspondence between Unleashed and City officials.[7] Conversations concerning possible locations of the Dog Park continued for several months, including discussions at public meetings held on August 12, 2012, October 15, 2012, and November 19, 2012.[8]

The Plaintiff first complained to the City in a memorandum dated March 13, 2013, arguing that the Dog Park "was inconsistent with the permitted land uses of land zoned Open Space by the City . . . ."[9] The Plaintiff further objected in an August 26, 2013 memorandum, alleging possible Freedom of Information Act ("FOIA") violations resulting from "behind-the-scenes negotiations" between the City and Unleashed.[10] Despite these protests and several other communications from the Plaintiff,[11] plans for the Dog Park moved forward, and at an October 6, 2014

---

[5] *Id.* at ¶ 12 (quoting Pl's Answering Br. to DNREC's Mot. to Dismiss, Ex. 1, ¶ 5.A (the "Ground Lease")).
[6] *Id.* at ¶ 17.
[7] *Id.* at ¶ 18.
[8] *Id.* at ¶¶ 19–21, 24, 27.
[9] *Id.* at ¶ 28.
[10] *Id.* at ¶ 29.
[11] *See id.* at ¶¶ 30, 35.

meeting, the City and Unleashed approved a memorandum of understanding ("MOU"), and the City announced DNREC's approval of the Dog Park.[12]

*C. Procedural History*

The Plaintiff filed his Amended Complaint on January 20, 2015, seeking declaratory judgments and injunctive relief. The Plaintiff challenges the Defendants' respective roles in the execution of the Ground Lease;[13] the transfer of a small portion of the Land from DNREC to DelDOT and the granting of an easement thereon for a road to provide access to land owned by Lifetime;[14] the City's October 2014 designation of 4.5 acres of the Leased Premises to be used for the Dog Park;[15] and the August 20, 2014 execution of an amendment (the "Amendment") to a pre-existing easement agreement between DNREC and Townsend which had been in effect since 1992 (the "1992 Easement").[16]

In response, all of the Defendants except Lifetime submitted Motions to Dismiss.[17] After full briefing on those motions, I heard oral argument on June 25,

---

[12] *Id*. at ¶¶ 31–32.
[13] Oral Argument Tr. 40:17–20.
[14] Compl. ¶¶ 87–88.
[15] *Id*. at ¶ 71; Oral Argument Tr. 45:4–6.
[16] Compl. ¶¶ 78–86; Oral Argument Tr. 15:17–17:1.
[17] Lifetime did not enter an appearance at Oral Argument and it has not submitted any briefing to the Court. While Lifetime is named as a Defendant in the Plaintiff's Complaint, it does not appear that the Plaintiff has actually asserted any claims against Lifetime; Lifetime is only mentioned in Count V of the Complaint, which asserts a claim against *DNREC* for the alleged *ultra vires* grant to Lifetime of an easement through Open Space for access to a private subdivision. Accordingly, to the extent needed, I dismiss any claims against Lifetime as a party to this action.

2015 (the "Oral Argument"). For the reasons set forth in my bench decision, I granted the Motions to Dismiss as to Townsend,[18] Lingo,[19] and Unleashed[20] in full, and as to the State with respect to claims arising from the alleged impropriety of the Ground Lease.[21] I denied the City's Motion to Dismiss with respect to allegations that the October 6, 2014 City Council Meeting was improperly noticed under FOIA.[22]

I then requested that the Plaintiff, the State, and the City submit letters to the Court, summarizing their views as what issues remain at this stage of litigation. After reviewing these letters and the decisions I made during the Oral Argument, I find that it remains for me to address the following: (1) any remaining FOIA claims against the City or State; (2) whether the Dog Park violates the Ground Lease; (3) the legal effect of DNREC's failure to consult with the Open Space Council regarding the Dog Park and its grant of an easement to Lifetime; (4) whether the Dog Park violates the City's 2005 Comprehensive Plan; (5) whether the City violated its authority granted by the City Charter in assuming the custody and responsibility for road maintenance of a portion of Park Road and Samantha Drive; (6) whether the City was "biased" in selecting a location for the Dog Park; and (7)

---

[18] *See* Oral Argument Tr. 16:24–17:1.
[19] *See id.* at 8:2–4.
[20] *See id.* at 7:3–4.
[21] *See id.* at 63:2–6.
[22] *See id.* at 63:7–64:4.

whether any civil conspiracy exists between the remaining parties.[23]   For the

following reasons, I dismiss all of the remaining claims, leaving only the FOIA claim

relating to the October 2014 City Council meeting for further litigation.

## II. STANDARD OF REVIEW

When considering a motion to dismiss, the Court must accept all well-pleaded

factual allegations in the Complaint as true,[24] and draw all reasonable inferences in

favor of the non-moving party.[25]   "[E]ven vague allegations are 'well-pleaded' if

they give the opposing party notice of the claim."[26]   However, the Plaintiff must still

provide a "reasonably conceivable set of circumstances susceptible of proof,"[27] and

the Court need not "accept conclusory allegations unsupported by specific facts

or . . . draw unreasonable inferences in favor of the non-moving party."[28]

## III. ANALYSIS

Addressing the Defendants' Motions to Dismiss was made particularly

difficult by the fact that the Plaintiff, in stating his claims, has made bald assertions

---

[23] The Plaintiff also suggests that the 1992 Easement (as discussed in Count II) remains at issue in this case—that is, the Plaintiff contends that DNREC exceeded its authority in amending the easement.  This issue was addressed from the bench in the granting of Townsend's Motion to Dismiss.

[24] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (citing *Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted)).

[25] *Id.*

[26] *Id.*

[27] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc.*, 812 A.2d at 896–97).

[28] *Price v. E.I. duPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent–A–Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

of the violation of numerous statutes by the City and State, failing to follow those allegations with any explanation. I am limiting my analysis to those claims that have been clarified in the briefing or at Oral Argument; all remaining allegations not briefed or otherwise explained are considered waived.[29]

## A. FOIA Claims Against the City and State

The Plaintiff alleges in Count II of the Complaint that "[t]he entire State agency and municipal permitting process is marked by egregious, arbitrary and capricious government decision-making in violation of . . . FOIA in approving this location for the Dog Park";[30] that the City "approved an MOU with [Unleashed] in October 2014 that is in violation of the Open Meeting provisions of the FOIA";[31] and that the City "also violated the Open Meeting provisions of the FOIA . . . by agreeing behind the scenes to establish a [Dog Park] within the [Leased] Premises without the required D&U Plan and public process."[32] In relief for these alleged FOIA violations, the Plaintiff seeks a declaratory judgment that "the approval of the Dog Park and MOU associated with it are void."[33]

---

[29] See In re Crimson Exploration Inc. S'holder Litig., 2014 WL 5449419, at *26 (Del. Ch. Oct. 24, 2014) (waiving the plaintiffs' claim where they "did not mention [the claim] in their Opposition Brief or at the Argument") (citing Emerald Partners v. Berlin, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003) ("It is settled Delaware law that a party waives an argument by not including it in his brief.")).
[30] Compl. ¶ 69.
[31] Id. at ¶ 71.
[32] Id. at ¶ 73.
[33] Id. at ¶ 103.

At Oral Argument, the State argued that it did not violate FOIA because many of the communications between government officials that the Plaintiff alleges were violations of FOIA did not rise to the level of a "meeting" as defined by FOIA.[34] The State argued in the alternative that, even if I were to find that the communications required a public meeting under FOIA, the Plaintiff's challenges are time-barred by the "60 day limit" for FOIA claims.[35] The City seconded the State's position, stating that it "largely join[ed] in the presentation as made by . . . the State."[36] Following the Oral Argument, I found from the bench that all of the Plaintiff's allegations of FOIA violations—with the exception of those surrounding the October 6, 2014 City Council Meeting—were time-barred.[37] To the extent that it was unclear from that bench ruling, the statute of repose as provided by 29 *Del. C.* § 10005(a) is six months.[38] And to reiterate that bench ruling, I find that the Plaintiff's failure to contest the alleged FOIA infractions within six months amounts to laches, by analogy to the statute of limitations period, and dismiss the remaining

---

[34] Oral Argument Tr. 19:18–20:1.
[35] *See id.* at 19:18–20:13.
[36] *Id*. at 29:7–9.
[37] I denied the City's Motion to Dismiss with respect to the Plaintiff's sole "timely FOIA complaint," holding that the current state of the record did not support the City's contention that the public notice given for the meeting was sufficient. *See id*. at 62:14–64:2.
[38] 29 *Del. C.* § 10005(a) provides:
> Any action taken at a meeting in violation of this chapter may be voidable by the Court of Chancery. Any citizen may challenge the validity under this chapter of any action of a public body by filing suit within 60 days of the citizen's learning of such action but *in no event later than 6 months after the date of the action*.

(emphasis added).

9

FOIA claims.

### B. The Dog Park as a Violation of the Ground Lease

In Count I of the Complaint, the Plaintiff alleges that "[t]he entire State agency and municipal permitting process is marked by egregious, arbitrary and capricious government decision-making in violation of the Ground Lease . . . in approving this location for the Dog Park,"[39] and that the City approved an MOU with Unleashed in October 2014 that is "in violation of the . . . terms of the Ground Lease which mandate a public process."[40] Specifically, the Plaintiff asserts that the Ground Lease calls for the City to "undertake a public process to establish a Development and Use Plan . . . for the Leased Premises,"[41] but that the City approved the D&U Plan without input from the public.[42] The Plaintiff seeks, again, a declaratory judgment that "the approval of the Dog Park and MOU associated with it are void,"[43] as well as "an injunction enjoining [Unleashed] and [the City] from establishing a Dog Park in the proposed location on the [Leased] Premises until the City and DNREC conform to the terms of the Ground Lease or amend it . . . ."[44] Both the City and the State contend that the Plaintiff lacks standing to enforce the Ground Lease. In response, the Plaintiff argued at Oral Argument, as a basis for standing, that "I, as a member

---

[39] Compl. ¶ 69.
[40] *Id.* at ¶ 71.
[41] Ground Lease ¶ 5.A.
[42] Compl. ¶ 14; Pl's Answering Br. to DNREC's Mot. to Dismiss 6.
[43] Compl. ¶ 103.
[44] *Id.* at ¶ 111.

10

of the public, am the third-party beneficiary. [The Ground Lease] certainly wasn't written for the benefit of DNREC."[45]

Under Delaware law, "[t]he party invoking the jurisdiction of the Court bears the burden of first establishing the elements of standing."[46] "To establish standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and the conduct of which plaintiff complains; and (3) that a favorable decision is likely to redress the injury."[47] Here, the Plaintiff seeks to invoke contractual rights that he argues run to DNREC, and incidentally to the public at large, under the terms of the Ground Lease. An incidental beneficiary to a contract generally does *not* have standing under Delaware law to enforce the terms of an agreement to which it is not a party.[48] An exception to this rule applies where:

> (i) the contracting parties . . . intended that the third party beneficiary benefit from the contract, (ii) the benefit [was] intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third-party [was] a material part of the parties' purpose in entering into the contract.[49]

However, where the plaintiff–third-party beneficiary is at most part of a "poorly defined" group of incidental beneficiaries, the plaintiff lacks standing to enforce the

---

[45] Oral Argument Tr. 38:9–12.
[46] *Cartanza v. Del. Dept. of Natural Res. and Envtl. Control*, 2008 WL 4682653, at *4 (Del. Ch. Oct. 10, 2008) (citing *Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1109 (Del. 2003)).
[47] *Id.*
[48] *See Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 634 (Del. 1993).
[49] *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *3 (Del. Ch. Feb. 17, 2004) (citing *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001)).

contract.[50]

Here, due to the highly generalized language of the Ground Lease, I find that the Plaintiff cannot assert standing as a third-party beneficiary. The Ground Lease mentions only that the land shall remain open to the "general public" and lacks specific language to support a finding that the parties intended for any particular member of the public, such as the Plaintiff, to be able to sue to enforce its terms.[51] Helpful to me here is our Supreme Court's analysis in *Triple C Railcar Service, Inc. v. City of Wilmington.*[52] In that case, the Court held that the plaintiff did "not enjoy standing to bring suit" on a contract between the federal government and the City of Wilmington—a contract broadly in favor of the public interest—under which the City agreed to maintain a flood gate. The *Triple C* Court adopted the "Restatement rule" that "a promisor bound to . . . a State . . . by contract to do an act or render a service to some or all of the members of the public . . ." is not liable to such members upon breach, absent manifestation of such intent in the contract.[53] Similarly, the Plaintiff here, as a member of the public, lacks standing to specifically enforce the contract in equity.

I find that the Plaintiff lacks standing to enforce the Ground Lease, to the

---

[50] *See Triple C Railcar Service*, 630 A.2d at 634.
[51] *See* Ground Lease ¶ 5.A.
[52] 630 A.2d 629 (Del. 1993).
[53] *Id.* at 633 (citing *Restatement of the Law: Contracts* § 145).

extent it forms a contract between the City and the DNREC Department of Parks and Recreation, of which the Plaintiff is only one among a large and poorly defined group of incidental beneficiaries, namely, the public at large, or all residents of the City of Lewes.[54]  Therefore, I dismiss the claims arising from the Ground Lease in Count I.

### C.  DNREC's Failure to Consult with the Open Space Council Regarding the Dog Park and its Grant of an Easement to Lifetime in Violation of the Delaware Land Protection Act

The Plaintiff seeks to enjoin the use of the Dog Park and the use of the easement to the Lifetime subdivision under the Delaware Land Protection Act (the "DLP Act").[55]  First, in Count I of the Complaint, the Plaintiff alleges that DNREC "was obligated to seek the advice and consultation of the [Open Space] Council [the "OSC"] if any use of the Open Space affects the existing environment, i.e., flora and fauna,"[56] citing 7 *Del. C.* § 7506(5).  No such consultation was obtained. The Plaintiff seeks, accordingly, an injunction enjoining Unleashed and the City from establishing the Dog Park until "DNREC obtains the advice and consultation of the [OSC] on the effect of a Dog Park on the flora and fauna in this location."[57]  At Oral Argument, the Plaintiff clarified that he alleges in his claim that "it was illegal for

---

[54] *See id.* at 634.  The Plaintiff suggests that, at least, all residents of Lewes are intended beneficiaries of the Ground Lease.  *See* Oral Argument Tr. 38:13–20.
[55] 7 *Del. C.* §§ 7501–10.
[56] Compl. ¶ 75.
[57] *Id.* at ¶ 111.

DNREC and the City to use [the 4.5–acre parcel] as a dog park without consulting the [OSC]," because the decision affected a statutory "preservation matter."[58]

Second, the Plaintiff alleges in Count V that DNREC violated the DLP Act and "other statutory procedures" in granting to Lifetime in 2010 an easement through the Leased Premises for use as an access road—Samantha Drive—to a private subdivision.[59] Specifically, the Plaintiff objects to the approximately 600 feet of the access road that fall on State-owned public trust land in the Open Space program,[60] asserting, as with the Dog Park, that DNREC was obligated to first "seek the advice and consultation of the [OSC] since that transaction was a conversion in use of Open Space."[61] The Plaintiff seeks in relief a "declaratory judgment that DNREC acted *ultra vires* [apparently, in failing to consult with the OSC] in allowing Lifetime to use public trust land in the [Open Space] program as an access road to the [] subdivision"[62] and an "injunction enjoining DNREC to take measures to rectify the granting of an easement to Lifetime for the use of public trust land in the [Open Space] program as an access road to the [] subdivision."[63] I note that, in its reply

---

[58] Oral Argument Tr. at 43:1–5.
[59] Compl. ¶¶ 94–98.
[60] *Id.* at ¶ 64.
[61] *Id*. at ¶ 96. In the Complaint at Paragraph 98, Lechliter also alleges that DNREC improperly "failed to obtain an Act of the General Assembly approving the conversion in use of Open Space . . . ." I consider this argument waived, as it was not addressed by the Plaintiff at Oral Argument or in his briefing regarding the City's or DNREC's Motions to Dismiss. *See supra* note 29.
[62] Compl. ¶ 106.
[63] *Id.* at ¶ 114.

brief, DNREC impliedly concedes that the Land is Open Space, such that the DLP Act applies to DNREC's use of the Land, and I so assume for purposes of this motion only.

DNREC first argues that I am without jurisdiction to hear these claims, since the appropriate remedy here, if any, is via a writ of mandamus, which is not available from this Court. The Plaintiff is not seeking simply to cause DNREC to act, however; he is, as laid out above, seeking equitable relief. I find for purposes of this motion that the Plaintiff has invoked equitable jurisdiction. Next, DNREC argues that the Plaintiff lacks standing to bring both claims. The Plaintiff does not cite any statute that itself provides standing to seek review of the complained of actions by DNREC. Instead, he argues that he has standing to challenge DNREC's approval of the location of the Dog Park because that decision caused him to suffer an injury, and that he has standing as a taxpayer to challenge DNREC's grant of an easement to Lifetime. In addressing standing, it is crucial to keep in mind the actions complained of here: DNREC's granting of an easement and agreeing to the location of the Dog Park *without affording the OSC an opportunity to provide its advice and consultation.*

1. Standing and Injury in Fact

The standing requirement exists to ensure that the courts of this state do not address issues in an advisory manner, or to satisfy the interests of mere

15

intermeddlers; it limits matters on which the courts must devote scarce public resources to actual controversies, and ensures that the common law is created in light of presentations by parties with a concrete interest in the outcome. In order to be able to point to an injury sufficient to demonstrate standing, the Plaintiff must show that he has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[64] The injury must be causally connected to "the conduct complained of" and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[65]

The OSC is a body of nine members, created by the DLP Act, that advises on matters relating to the administration, implementation, and financing of the Open Space program.[66] As explained more fully below, the DLP Act requires that, with respect to "preservation matters" involving land covered by the Act, the OSC must "[a]dvise and consult" with DNREC.[67] The Plaintiff cannot demonstrate an injury in fact related to the failure of DNREC to consult with the OSC. That action has not caused him concrete or actualized harm, and any injury is purely speculative. The

---

[64] *Dover Historical Soc. v. City of Dover Planning Com'n*, 838 A.2d 1103, 1110 (Del. 2003) (quotations omitted).

[65] *Id.*

[66] 7 *Del. C.* § 7505(a)–(b). The OSC consists of one member of the Senate, one member of the House of Representatives, and seven members appointed by the Governor. *Id.* at § 7505(b)(1)–(3).

[67] *Id.* at § 7506(5).

Plaintiff has not alleged, nor could he, that in a consultation with DNREC, the OSC would have recommended against the location of the Dog Park, nor that DNREC would have followed such a recommendation. Therefore, the Plaintiff cannot successfully assert standing to proceed against DNREC here.

2. Taxpayer standing

The Plaintiff alleges taxpayer standing to contest DNREC's grant of the easement to Lifetime. Taxpayer standing allows a plaintiff–taxpayer to challenge an illegal use of public funds or property, regardless of any special injury.[68] "Taxpayer standing in Delaware is reserved for a narrow set of claims involving challenges either to expenditure of public funds or misuse of public lands."[69] It is focused on whether use of public funds or property itself is legal, not merely on the process by which decisions regarding such use are made—otherwise, the breadth of taxpayer standing would be near-limitless. In that case, the salutary limitation on advisory or hypothetical opinions provided by the standing requirement would be lost.

The Plaintiff does not contend that the grant of the easement itself is an unlawful use of public property; the Plaintiff's challenge is that DNREC failed to consult with the OSC before deciding to grant the easement. Such a requirement,

---

[68] *Danvir Corp. v. City of Wilmington*, 2008 WL 4560903, at *3 (Del. Ch. Oct. 6, 2008) (citation omitted).
[69] *Reeder v. Wagner*, 974 A.2d 858, at *2 (Del. 2009) (internal quotation omitted).

according to the Plaintiff, arises from the DLP Act, at 7 *Del. C.* § 7506, which sets forth the duties of the OSC. Section 7506 provides in part that the OSC shall "[a]dvise and consult with the Secretary of the Department of Natural Resources and Environmental Control and with other state land preservation agencies and staff on preservation matters . . . ." The Plaintiff argues that the easement involves "preservation matters," and that 7 *Del. C.* § 7506(5) required a consultation with the OSC before taking action. The statute does not define the term "preservation matters"; regardless, even in the unlikely event that the granting of an easement or the use of Open Space as a dog park—neither of which involve the status of the preservation of the property as Open Space—can be considered matters of preservation, the statute does not require any action of DNREC. Impliedly, it directs DNREC to receive the advice and counsel—but not the consent—of the OSC. However, nothing in the DLP Act as I read it would bind DNREC to follow the counsel of the OSC regarding the easement. DNREC has the independent statutory authority to manage public lands.[70]

---

[70] *See* 7 *Del. C.* § 4504(a). The Plaintiff points to this Court's decision in *Cartanza v. Delaware Department of Natural Resources and Environmental Control*, 2008 WL 4682653 (Del. Ch. Oct. 10, 2008), as holding that Section 7506(5) places an affirmative duty on DNREC to consult with the OSC, absent which DNREC's actions are illegal, but the Plaintiff misreads that case. *Cartanza* holds that the "[r]eview and recommend" language found in subsections (1) through (4) of Section 7506—language absent from subsection (5) at issue here—when considered in conjunction with other statutory provisions, makes clear that the General Assembly intended the recommendation of the OSC to be a condition precedent to DNREC's creation of "state resource areas." Since the OSC had failed to act as required by law, and since that action was a condition precedent to creating the "state resource areas" at issue in *Cartanza*, the purported creation of the areas was a nullity.

18

The foundational case applying taxpayer standing to use of real property is *City of Wilmington v. Lord*.[71] That case involved land that Wilmington had acquired outside the city limits as a park, subject to a public trust. An express deed restriction embodied this trust. Wilmington sought to develop this property industrially by erecting a water tank and related structures incompatible with a park. Because the taxpayer objected to the industrial development as a direct violation of the trust, he had standing on that ground.[72] Here, as stated above, the Plaintiff does not contend that DNREC was constrained by a public trust from conveying an easement to Lifetime, or otherwise lacked the authority to convey the easement—he merely seeks to constrain the conveyance until after consultation with the OSC. In other words, the Plaintiff challenges only the process by which DNREC made the decision to convey the easement.[73] It is unclear if the Plaintiff also seeks to assert taxpayer standing with respect to DNREC's decision to consent to the location of the Dog Park without the consultation of the OSC. If so, the same analysis would apply. I conclude that the Plaintiff lacks taxpayer standing.

Accordingly, the Plaintiff's challenges to DNREC's actions under the DLP Act in Counts I and V are dismissed for lack of standing.

---

Conversely, nothing in the DLP Act precludes DNREC's ability to act in "preservation matters," and Section 7506(5) simply directs the OSC to "advise and consult" in such matters.

[71] 378 A.2d 635 (Del. 1977).

[72] *Id.* at 638.

[73] *See* Compl. ¶¶ 95–98.

19

*D. The Dog Park as Violation of the City's 2005 Comprehensive Plan*

The Plaintiff alleges in Count I of the Complaint that the City "violated the Comprehensive Plan and Zoning regulations by approving the Dog Park."[74] No specific relief is sought with respect to this claim. At Oral Argument, the Plaintiff attempted to clarify the allegation as follows: the City's 2005 Comprehensive Plan (the "Comp. Plan") designates the Land as Open Space; parks are a permissible use of Open Space under the Comp. Plan, but, per the City's Zoning Table of Permitted Uses (the "Zoning Table"), land zoned as Open Space may not be used for "recreation"; thus, establishing a dog park on the Lease Premises, in which "recreation" (presumably human as well as canine) will occur, violates the Comp. Plan.[75] I expressed great skepticism[76] that the Comp. Plan prohibits recreation in public parks,[77] but at the Plaintiff's request, I reserved ruling on the claim to allow the Plaintiff time to address a letter to the Court pointing out the provision at issue.[78]

Upon review of the supplemental submission, I find the Plaintiff's argument

---

[74] *Id.* at ¶ 77.

[75] *See* Oral Argument Tr. 45:19–51:2.

[76] I am not, however, so naïve as to dismiss the idea that some municipal government, somewhere, has banned recreation in its public parks.

[77] *See id.* 48:19–21.

[78] In his supplemental briefing to the Court, the Plaintiff repeats the allegations made at Oral Argument with respect to the Zoning Table and attempts, belatedly, to raise a new argument: that 7 *Del. C.* § 7509(a) required DNREC to obtain the approval of the OSC for the Dog Park. While I question the applicability of this statute to the matter at hand, I will not consider the merits of this argument at this stage; the parties were directed only to provide an informal, targeted memo on the remaining issues left for the Court's review. It is too late for the Plaintiff to assert novel claims not pled in the Complaint.

that "recreation is not permitted in [O]pen [S]pace"[79] to be an incorrect interpretation of the Zoning Table. A review of the Zoning Table reveals that, while a "[r]ecreation *facility*" is not a permitted use of Open Space, "[p]arks and open space" is a permitted use.[80] The Plaintiff apparently reads the prohibition of "recreation facilities" as a ban on *all* recreation, but such a reading is neither warranted by the Zoning Table, nor has the Plaintiff proffered any other support for this contention. "Recreation facility" is an undefined term in the Zoning Table, but since "parks" are permitted in Open Space but "recreational facilities" are not, the definition of the latter must necessarily exclude the former. Nothing in the cited materials bans parks in Open Space, or recreation in parks, in the City of Lewes.

At Oral Argument, the Plaintiff also contended that the Dog Park is not a "park"—and thus is not a permitted use of Open Space—because, in the Plaintiff's view, a City "park," to be considered such, must be administered by a public entity.[81] I find this argument unavailing. The State—a public entity—owns the land at issue. This land, which I have termed the "Leased Premises," has been leased to the City— another public entity. While Unleashed, a private non-profit entity, has been given responsibility for establishing the Dog Park, via a sublease of the 4.5 acres at issue,

---

[79] Oral Argument Tr. 48:17.

[80] *See* Pl's Memo. of Remaining Issues, Ex. B, 007–010 (the "Zoning Table") (emphasis added).

[81] Compl. ¶ 28. I presume that the Plaintiff, though he cites no authority for this contention, refers to the definition of a "park" as provided by the Lewes City Code: "[l]and, a playground, recreation center, or any other public area in the City *owned or used by a public entity* and devoted to active or passive recreation." Lewes City Code, Chapter 197, § 197-106 (emphasis added).

the Dog Park will be made available, without restriction, to the public at large. Moreover, the land is still owned by a public entity. The Plaintiff has cited no authority to suggest why circumstances such as these would take the Dog Park out of the definition of a "park." Thus, because the facts pled in the complaint demonstrate that the Dog Park is in fact a "park," which is a permissible use of Open Space under the Zoning Table, I dismiss these allegations for failure to state a claim.[82]

*E. Transfer of Custody and Responsibility for Road Maintenance*

In January 2013, the City and DelDOT signed a Transfer of Custody and Maintenance Agreement (the "Transfer Agreement"), pursuant to which the City assumed the custody and maintenance responsibility for a small portion of Park Road and Samantha Drive in Lewes, Delaware.[83]

The Plaintiff alleges in Count III of the Complaint that the City "failed to adhere to the terms of its *Charter* for opening a new street when it signed the Transfer Agreement with DelDOT,"[84] arguing that the City, under Section 34 of its City Charter,[85] was obligated to "appoint a committee to investigate the pros and cons of assuming responsibility for the portion of Park Road and Samantha Drive

---

[82] I therefore need not resolve the issue of whether the Plaintiff has standing, as the City contends he does not, to challenge the Dog Park as non-conforming under the City's Comp. Plan.
[83] Compl. 3, ¶ 55.
[84] *Id*. at 31.
[85] *Id.* at ¶ 56.

22

referenced in the Transfer Agreement and to hold a public hearing prior to opening a new street,"[86] and that the Transfer Agreement is "a misuse of Lewes taxpayer funds and a misuse of public land."[87] The Plaintiff seeks in relief a declaratory judgment that "the City violated its enabling legislation in its *Charter* when it signed the Transfer Agreement; and that said Transfer Agreement is void,"[88] and an injunction "enjoining the City from using any taxpayer funds to maintain the segment of Park Road and Samantha Drive referenced in the Transfer Agreement until the City, DNREC, and DelDOT amend the controlling agreements and comply with all the provisions of the *City Charter*, DLP Act, and 30 *Del. C.* § 5423(c)(2) required for said Transfer Agreement."[89]

Section 34 of the City Charter provides that, "[t]he City Council shall have the power and authority to lay out, locate and open new streets or to widen and alter existing streets or parts thereof . . . ,"[90] and details the proper procedure by which the City should complete any of these tasks.[91] That procedure is only triggered by a petition filed by five or more affected property owners, and such a petition is lacking here. Moreover, while the City Charter prescribes the City's actions with respect to

---

[86] *Id.* at ¶ 88.
[87] *Id.* at ¶ 90.
[88] *Id.* at ¶ 104.
[89] *Id.* at ¶ 113. The Plaintiff did not further explain his argument with respect to 30 *Del. C.* § 5423(c)(2) in his briefing or at Oral Argument, and accordingly, it is waived. *See supra* note 29.
[90] The City's Reply Br., Ex. A (the "Charter of Lewes") § 34(a).
[91] *Id.* at § 34(b).

23

creating new roads, or for altering the course of or adding to the width of an existing road, it is silent as to assuming maintenance obligations, the action challenged here. That is because the purpose of the section is to establish a procedure for the location of a street, the resulting condemnation of land, and compensation therefor. The portion of the City Charter to which the Plaintiff refers is inapplicable to an agreement to maintain an existing public roadway, and the Plaintiff's argument borders on the frivolous.

The Plaintiff has not elaborated on his argument that the Transfer Agreement violated the DLP Act, except to repeat the allegation in his answering brief to the City's Motion to Dismiss.[92] To the extent that this allegation is not waived, I can conceive of no legal basis for it. Accordingly, I dismiss these claims in Count III.[93]

### F. Bias as to Location of the Dog Park

Count VI of the Complaint claims that the City "was not an impartial disinterested administrative body in voting for approval of the Dog Park location and size."[94] The Plaintiff does not seek any relief specifically with respect to this claim. I assume for purposes of evaluating the City's motion, however, that the Plaintiff seeks a declaration that the legislative action of the City and its Council

---

[92] Pl's Combined Answering Br. to the City's and Unleashed's Mots. to Dismiss 3.
[93] Again, I need not reach the City's assertion that the Plaintiff lacks standing to bring raise this issue, because he clearly fails to state a claim.
[94] Compl. at ¶¶ 99–100.

regarding the location of the Dog Park are void.

Generally, our courts will not inquire into the motives of a legislative body in order to invalidate actions within the scope of the legislators' power.[95]  Rather, legislators' decisions will be upheld unless "fraud or bad faith is proved."[96]  Even where the Council may be "convinced from the outset that the balance of community interest" lies in favor of a certain decision or outcome, no claim of bad faith may be sustained if the Council "considered the matter in an appropriate procedure; considered factors appropriate to the public interest; was legally free to exercise judgment[;] and had not been corrupted through bribery or other illegal means."[97]

The Complaint is innocent of allegations that any Council member has a pecuniary interest or is otherwise impermissibly invested in locating the Dog Park behind the Plaintiff's house.[98]  The Plaintiff argues that an allegation of a particular

---

[95] *See, e.g.*, *Ash/Rummunno Associates, Inc. v. Branner*, 1993 WL 11701, at *3 (Del. Ch. Jan. 19, 1993); *McQuail v. Shell Oil Co.,* 183 A.2d 581 (Del. Ch. July 26, 1962) (citing *Klaw v. Pau-Mar Const. Co.*, 135 A.2d 123 (Del. 1957).

[96] *Krahmer v. McClafferty,* 288 A.2d 678, 681 (Del. Super. 1972) (quoting *Piekarski v. Smith*, 153 A.2d 587 (Del. Ch. July 28, 1959)); *accord Pau-Mar Const. Co.*, 135 A.2d at 127–28 ("Courts inquire into the motives of municipal legislators acting within their powers only when there is a showing of bad faith or fraud.").

[97] *Pettinaro Enterprises v. Stango*, 1992 WL 187625, at *5 (Del. Ch. July 24, 1992) ("The individuals who hold municipal office are residents of the town or county whose municipal instrumentalities they are responsible for. They bring to this responsibility their experience as citizens and residents of the town or county. When exercising judgment required by their office they may be required to follow a process set-out by statute or dictated by due process standards. But unlike a judge who sits in a court of law, they need not approach their duties with no preconceptions about the course that would best promote the public good. . . . [I]t does not matter that, in fact, its members had made up their minds early on and never deviated from that view.").

[98] *See generally* Oral Argument Tr. 36:21–38:2.

25

financial interest is unnecessary to sustain a claim but fails to allege any other bad-faith motivation for the acts of which he complains, either in the briefing or at Oral Argument.[99] The Plaintiff's claim falls short of pleading facts even implying misconduct by the City Council members; in the Count, the Plaintiff merely incorporates by reference the allegations already set forth in the Complaint, adding only that unidentified members of the City Council were associated with Unleashed, and have lobbied for it.[100] At most, the Plaintiff has alleged facts to show inclination on behalf of certain Council members in favor of the *creation* of the Dog Park in Lewes. But, as pointed out multiple times in the briefing and at Oral Argument, the Plaintiff is not challenging, and actually generally supports, the construction of the Dog Park in Lewes.[101] The underlying driver of this action is the Plaintiff's objection to the City's decision as to the *specific location* of the Dog Park.[102] Thus, I find that

---

[99] *Id.* at 35:15–19. The Plaintiff's argument for completely impartial decision-makers appears to be taken to such an extreme as to bar decision-makers from having *any opinion whatsoever* in regard to the matter they are legislating. Notwithstanding the impracticality of such a requirement, the Council members at issue were elected to their positions, presumably, to some degree because of their opinions and vision for the future of Lewes. That the Plaintiff disagrees with the Council members' decision is not enough to demonstrate bad faith. *See Pettinaro Enterprises*, 1992 WL 187625, at *5.

[100] Compl. ¶ 100.

[101] *See* Pl's Answering Br. to DNREC's Mot. to Dismiss 25 ("Lechliter did not object to the Dog Park *per se*, but only the procedures used by [Unleashed] to achieve its goal and by the [City] and DNREC officials to approve the final concept and location.").

[102] *See id.* at 25 n.43 ("[Unleashed] could have had its Dog Park at the original site on the [Leased] Premises, but the surreptitious move to behind Lechliter's residence was the straw that borke [sic] the camel's back."). At Oral Argument, the Plaintiff advocated for location of the Dog Park on the hummock in the Great Marsh known locally as the Green Hill, connected to town by the remnants of a narrow dirt causeway that once provided access over the marsh. The location certainly has the advantage over the current location in being remote from the Plaintiff's home.

26

the Plaintiff has failed to allege bad faith sufficient to set aside a legislative act, and I dismiss this claim.

### I. Civil Conspiracy Among the Remaining Parties

That leaves only the Plaintiff's repeated allegations of conspiracy between various Defendants. As a result of my decisions above, only a single FOIA claim survives as a substantive clause of action. The Plaintiff agreed at Oral Argument that his civil conspiracy claims must be based on conspiracy regarding non-dismissed underlying claims.[103] Thus I need only consider Count I of the Complaint, where the Plaintiff alleges that

> Defendant City, DNREC, and [Unleashed] conspired to circumvent the requirements of the Open Meeting Provisions of the FOIA and the terms of the Ground Lease for a public process to establish a State-approved D&U Plan for the [Leased] Premises prior to approving any specific use on a portion of the [Leased] Premises, such as a Dog Park.[104]

To properly state a claim for civil conspiracy under Delaware law, a plaintiff must plead facts supporting "(1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to the plaintiff."[105]

---

[103] *See* Oral Argument Tr. 6:9–14. Consequently, to the extent that civil conspiracy claims have been pled based on other (non-FOIA) substantive alleged wrongs, those claims are dismissed.
[104] Compl. 28.
[105] *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. Nov. 22, 2006) (citing *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149–50 (Del. 1987)).

27

"Because 'a plaintiff often cannot produce direct evidence of a conspiracy,' circumstantial evidence can be offered as 'proof that it occurred.'"[106]

The Plaintiff's conclusory allegations in Count I fail to state a claim. The hallmark feature of a conspiracy is the confederation among two or more parties to commit an unlawful act, as set out in prong (1) above. To simply allege that two or more parties have committed the same wrong, without more, is not enough to satisfy this element; at the pleading stage, the Plaintiff must allege that the parties *knowingly* participated in the conspiracy and that there was coordination of action among the parties.[107] Here, the Plaintiff has alleged in separate parts of the Complaint that the City and DNREC violated FOIA in dealings related to the Dog Park, but has alleged no facts whatsoever to suggest that those FOIA violations were related—that the City, State, or Unleashed knowingly conspired, or otherwise coordinated actions, in order to violate the Plaintiff's rights under FOIA. Therefore, I dismiss the remaining conspiracy claim in Count I for failure to state a claim.

## CONCLUSION

As Andrew Jackson said (or perhaps did not say), one man with courage makes a majority. No one can accuse Colonel Lechliter of lacking the courage of his convictions. If one man with intelligence and energy could make a cause of

---

[106] *Matthew v. Laudamiel*, 2015 WL 5723985, at *18 (Del. Ch. Sept. 28, 2015) (quoting *Reid v. Siniscalchi,* 2014 WL 6589342, at *6 (Del. Ch. Nov. 20, 2014)).
[107] *See OptimisCorp v. Waite*, 2015 WL 5147038, at *57–*59 (Del. Ch. Aug. 26, 2015).

action, the Plaintiff would have stated a slew of them here. To state a cause of action requires a legal basis and standing, however, which are lacking in most of his claims regarding the Land. For the reasons set out above and in my bench decision, all of the Plaintiff's claims are dismissed with prejudice, except for any claims sounding in nuisance, which are dismissed without prejudice, and his allegation that a 2014 City Meeting violated FOIA, which awaits litigation.[108]

The parties should provide a form of order consistent with this Memorandum Opinion and my bench ruling, and consult regarding a schedule for further litigation.

---

[108] Because of decisions made in this Opinion, I need not address many of the arguments raised by the Defendants, including, for example, those concerning whether certain of the Plaintiff's claims are barred by laches, whether the Plaintiff exhausted his administrative remedies, and whether the Plaintiff has an adequate remedy at law.